INHABITANTS OF STOUGHTON *vs.* ABRAM C. PAUL & others.

Norfolk.   December 7, 1898. — March 21, 1899.

Present: FIELD, C. J., HOLMES, MORTON, BARKER, & HAMMOND, JJ.

*Waterworks — Purchase of Land — Statute — Vote of Town.*

If a statute authorizes a corporation to take certain waters for the water supply of a town, and also all lands necessary for the preservation and purity of the sources of the supply, and also authorizes the town to purchase of the corporation all its rights, powers, and franchises, which the town does, and provides further that water commissioners shall have all the authority granted to the town by the statute and not otherwise specifically provided for, subject to such *instructions as the town may impose by its vote,* a purchase by the commissioners of land, through wells on which it is intended to get the water by interception or percolation, without an express taking of the water, is within the scope of the statute.

A vote of a town not to instruct its water commissioners to buy certain land is not to be construed as an instruction to them not to buy it.

The facts that the bonds sold to pay for land bought by the water commissioners of a town for a water supply were signed by the treasurer in office at their date, and not by the one in office when they were sold, and that by the terms of the purchase of the land the town assumed a mortgage to which it was subject, do not afford any reason for relieving the town of the purchase.

BILL IN EQUITY, filed November 29, 1897, and amended subsequently, against Abram C. Paul, George F. Walker, George A. Wales, Amasa E. Lincoln, Benjamin F. Smith, and Charles G. Smith, to restrain the first three defendants, as water commissioners of Stoughton, from using land purchased from the defendant Lincoln for a water supply, and to set aside the sale of the land and the contract made with the defendants Smith for the construction of water works. Hearing before *Allen*, J., who entered a decree for the plaintiff, except as to the relief sought in regard to the sale; and both the plaintiff and the defendants except Lincoln appealed to the full court. The facts appear in the opinion.

*M. Storey*, for the plaintiff.

*N. B. Bryant*, for the defendant Lincoln.

*L. S. Dabney & O. A. Marden*, for other defendants.

HOLMES, J.   This is a bill brought to restrain the water commissioners of Stoughton from using land purchased by their predecessors in 1897 for a water supply, and to set aside the sale and the contract made for the construction of water works. The only question is whether the commissioners had authority to buy the land.

By St. 1886, c. 240, § 15, the commissioners have all the authority granted to the town by the act, and not otherwise specifically provided for, subject to such instructions as the town may impose by its vote; by § 10 the town is authorized to purchase of the company incorporated by the act for the purpose of supplying the town with water its franchise and all its rights, powers, and privileges, and by § 2 the corporation may take the waters from Knowles's Brook and other waters, and also all lands, etc. necessary for the preservation and purity of all the before mentioned sources of water supply, etc.   The town made the purchases and appointed water commissioners. It follows that the commissioners had power to buy the land, if within the scope of the act, unless they had been instructed otherwise by the town.

We think that there can be no doubt that the purchase of the land was within the scope of the act.   The objection urged is that it was expected to get the waters of Knowles's Brook through wells on this land, by interception or percolation.   It is assumed that this was to be done without a taking of the brook, and some language of Endicott, J. is cited to the effect that there was no authority to take land for that purpose.   *Bailey v. Woburn*, 126 Mass. 416, 418, 419.   But we should have drawn a contrary conclusion from the one to which that case has led the plaintiff.   For it was decided that there was a taking of the water by the proceedings of the town, and that the taking of the land was right and valid.   See further *Hollingsworth & Vose Co. v. Foxborough Water Supply District*, 165 Mass. 186, 188.   We must assume that the purchase was for the purpose contemplated by the act unless the contrary clearly appears.   See *Lynch v. Forbes*, 161 Mass. 302, 308, 309.   Whether it was expected or

hoped to get the water without a further act of taking or not, and without paying for anything but the land, no doubt it was expected to do whatever was necessary in order to get the water. It does not matter that an express taking of the water was postponed. *California Southern Railroad* v. *Kimball*, 61 Cal. 90. Lewis, Em. Dom. § 395.

The argument most pressed is that the town had instructed the commissioners not to proceed as they did. The facts do not require statement at any great length. The town bought out the water company in 1892. There followed discussions and consultations as to which was the best source of water supply, and a considerable sum of money was spent upon the Muddy Pond Brook mentioned in the act. In the spring of 1895 the water commissioners contemplated getting water from Knowles's Brook, and a town meeting was called on May 21 under a warrant containing among others this article: " To see what action the town will take in regard to purchasing certain land from Mr. A. E. Lincoln for a new water supply, and to determine the method of purchasing the same." Under this a motion was made to " authorize the water commissioners to purchase what land they think necessary for Mr. Lincoln," which was laid on the table, and a motion under another article that they confer as to the amount of land needed, price, etc., was lost.

On July 2 there was another meeting under articles " to see if the town will authorize and instruct its board of water commissioners to purchase " the land in question, and also to see if the town will authorize and instruct the board to make a contract for the building of some water works. Under the former article it was moved that the board " be instructed," not " authorized and instructed," as in the article, to buy the land. This was voted in the negative, as was also a motion to instruct the board to make a contract. These and the former votes are what are relied on by the plaintiff, and are all that really is material in the case, although there was put in some evidence showing secrecy, and calculated to give the impression that there was something discreditable in the attitude, if not in the conduct, of the water board ; and also evidence on the one side that at the town meeting the question was discussed whether it was wise to take Knowles's Brook or to retain the existing source,

and on the other side that there was talk either public or private
to the effect that the purchase was a responsibility which be-
longed to the water board, and that they ought not to come
to the town and make them take it.    Neither branch is im-
portant.    But the latter shows that at least some of those at
the town meeting knew, what was obvious to any one who
read the statute, that the commissioners would have the power
of the town unless the town took it away.    But the secrecy of
the action of the board when it did act in 1897 as well as its
quiescence for the intervening time after the votes are relied
on by the plaintiff as showing that the board understood that
the town was against the scheme.    On the other hand, the de-
fendants offer the not entirely satisfactory explanation that two
of the board at that time were, and were known to be, also op-
posed to the Knowles's Brook plan.

We think it very likely that the board did fear that the town
was against the scheme, or did at least expect a doubtful fight
if the plan were known before it became an accomplished fact.
But no prophetic insight or foresight on their part, however cor-
rect, diminished the power given them by the statute, unless
and until the town instructed them by its vote.    The fact that
a vote was understood to spring from an adverse opinion, or that
it did so, if it could be proved, would be immaterial.    Unless it
amounted to an instruction it could not cut down the power con-
ferred by the act.    The whole controversy is the very narrow
one whether the vote not to instruct the commissioners to buy
the land can be read as an instruction to them not to buy it.
We are of opinion that to do so is too great a stretch of the im-
port of the words used.    They are sensible as they stand, free
from doubt as to their meaning, and consistent with an under-
standing of the law on the part of the voters.    As we have
noticed already, while the article said " authorize and instruct,"
the motion conformed to the act and said only " instruct."    If
the voters knew the law, as to say the least it was their busi-
ness to, they knew the difference between refusing to instruct
the commissioners and instructing them the other way.    We are
of opinion that no admissible evidence in the case warrants a
different construction from that which we adopt.

Two other objections, more feared by the defendants than

pressed by the plaintiff, are that the bonds sold to pay for the land were signed by the treasurer in office at their date, not by the one in office when they were sold, and that by the terms of the purchase of the land the town assumed a mortgage to which it was subject. Neither of these affords any reason for relieving the town of its bargain.  *Bill dismissed.*