MEMPHIS & STATE LINE RAILROAD COMPANY *v.* UNION
RAILWAY COMPANY et al.

(*Jackson.*    April Term, 1905).

1. **STATUTES.** Title or substance of a law amended by implication need not be recited in the amending statute.

A *statute amending an existing law by implication, and not expressly purporting to do so, need not recite in its caption, or otherwise, the title or substance of the law so amended, for the constitutional requirement of such recitation applies only where the amending statute expressly purports to amend an existing statute.* (*Post, pp.* 512-514.)

Acts cited and construed:  1875, ch. 142; 1887, ch. 39.

Constitution cited and construed:  Art. 2, sec. 17.

Cases cited and approved:  Insurance Co. v. Taxing District, 4 Lea, 644; Maney v. State, 6 Lea, 218; Knoxville v. Lewis, 12 Lea, 181; Ballentine v. Pulaski, 15 Lea, 633; Poe v. State, 85 Tenn., 495; Railroads v. Crider, 91 Tenn., 506; Hunter v. Memphis, 93 Tenn., 571; State v. Yardley, 95 Tenn., 546, 559; Shelton v. State, 96 Tenn., 521; Henley v. State, 98 Tenn., 665; Railroad v. State, 110 Tenn., 598.

2. **SAME.** Repeals by implication apply to all classes of legislation.

Repeals by implication apply not only to police regulations, but to all classes of legislation. (*Post, p.* 514.)

Cases cited and approved:  Insurance Co. v. Taxing District, 4 Lea, 644; Ballentine v. Pulaski, 15 Lea, 633; Railroad v. Sadler, 91 Tenn., 508; Memphis v. Express Co., 102 Tenn., 336; Tyler v. King, 104 Tenn., 163.

3. **SAME.** No repeal by implication where there is no repugnance; case in judgment.

There is no such repugnance between the statute (Acts 1887, ch. 39), authorizing railroads to change their termini before final

Railroad v. Railway.

location of lines, and the statute (Acts 1889, ch. 158), applying
to the building of branch roads, as to work a repeal, by implica-
tion, of the former by the latter. (*Post, p.* 514.)

Acts cited and construed: 1887, ch. 39; 1889, ch. 158.

**4. SAME. Repugnancy must be wholly irreconcilable to work a
repeal by implication.**

Repeals by implication are not favored, and the repugnancy be-
tween the latter and the former act must be wholly irreconcil-
able in order to work a repeal of the former. (*Post, pp.* 515-518.)

Cases cited and approved: Buchanan v. Robinson, 3 Bax., 152;
Insurance Co. v. Taxing District, 4 Lea, 344; State v. Wilson, 12
Lea, 251; State v. Bank, 16 Lea, 122; Frazier v. Railroad, 88
Tenn., 138, 163; Fisher v. Baldridge, 91 Tenn., 418; Burnett v.
Maloney, 97 Tenn., 705; Blaufield v. State, 103 Tenn., 600.

**5. SAME. Same. Insufficient repugnancy to effect a repeal by
implication; case in judgment.**

There is no such repugnancy or inconsistency between the stat-
ute (Acts 1887, ch. 39), authorizing railroads to change their ter-
mini before final location of lines, and the statute (Acts 1897,
ch. 116), granting to all corporations the right to obtain amend-
ments to their charters in a certain way, as to work a repeal, by
implication, of the former by the latter. (*Post, pp.* 514-518.)

Acts cited and construed: 1887, ch. 39; 1897, ch. 116.

**6. SAME. Special laws as to corporations prohibited by the
constitution are such as designate particular corporations by
name.**

The constitutional prohibition against the creation of corpora-
tions or the enlargement or diminution of their powers by spec-
ial laws applies to laws for the benefit of particular corporations
designated by name, and does not apply to a statute (Acts 1887,
ch. 39) authorizing railroads to change their termini before final
location of their lines. (*Post, p.* 518.)

Acts cited and construed: 1887, ch. 39.

Constitution cited and construed: Art. 11, sec. 8.

7. **RAILROADS.** Line not finally located so as to preclude change of terminus under statute, when; case in judgment.

The line of railroad has not been finally located, where it has been located, and the road constructed, from one terminus a considerable portion of the way towards, and within about three miles of, the other terminus, but where the remainder of the line has not been located in any way, so as to preclude the fixing of the other terminus at a point beyond the point of construction, and beyond the terminus originally fixed in the charter, under a statute (Acts 1887, ch. 39), authorizing railroads to change their termini before final location of their lines. (*Post, pp.* 509-512, 518-524.)

Acts cited and construed: 1887, ch. 39.

8. **SAME.** Building of parallel lines is not prohibited.

There is no legislation which prohibits a railroad from building, or causing to be built, a railroad parallel to its own. (*Post, p.* 525.)

9. **SAME.** Same. Question of illegal construction of railroad cannot be collaterally raised in condemnation proceedings under eminent domain laws to obtain a right of way.

In a condemnation proceeding under eminent domain laws to obtain a railroad right of way, the question cannot be collaterally raised whether such proposed road is controlled by another existing railroad, so as to render the construction of the proposed road illegal, because the two roads will be parallel and competing. (*Post, pp.* 524, 525.)

Case cited and approved: Rogers v. Railroad, 91 Fed., 299, 33 C. C. A., 517.

10. **SAME.** City cannot defeat the exercise of eminent domain within its limits by withholding its consent for the occupation of its streets by the railroad.

A municipal corporation cannot, by withholding its consent for a railroad company to operate its road within the city, or to cross its streets and alleys, defeat the exercise of eminent domain possessed by the railroad company in locating its line through the city, but at most the city possesses only the power to regulate the location and construction of the road. (*Post, p.* 526.)

Railroad v. Railway.

11. **SAME.** Same. Absence of city franchise cannot be interposed by landowner against condemnation proceedings to obtain right of way in city.

In eminent domain proceedings by a railroad company to condemn land for a right of way within the limit of a city, the landowner cannot interpose the objection that the railroad company has not secured a franchise from the city to operate its road within the city limits or to cross its streets and alleys. (*Post, pp.* 526, 527.)

Cases cited and approved: Collier v. Railroad, 113 Tenn., 126; Railroad v. Kimball, 61 Cal., 90; Railroad v. Railroad, 87 Ill., 317; Railroad v. Dunbar, 100 Ill., 110; In re Railroad, 70 N. Y., 361; Stoughton v. Paul, 173 Mass., 148.

12. **SAME.** One railroad may condemn the land of another railroad for a right of way, when.

One railroad is entitled to condemn a right of way over the land of another railroad, not in actual use by it, nor essential to the exercise of its franchises, and wholly unsuitable for the purpose for which it claimed the land to be valuable, especially where it does not appear that there is a more practicable and feasible route for the proposed new road. (*Post, pp.* 527-533.)

Acts cited and construed: 1885, ch. 135.

Cases cited and approved: Railroad v. Cemetery Co., 116 Tenn. 400; Railroad v. Railroad (C. C.), 41 Fed., 293; Railroad v. Railroad, 25 Am. & Eng. Railroad Cases, 164.

13. **SAME.** Discretion in locating route not controlled by courts, nor exercised by landowner in condemnation proceedings for right of way.

The question of the most practicable and feasible route for a railroad is a matter left largely to the discretion of the railroad company, which discretion the courts cannot control, and in condemnation proceedings to obtain a right of way the landowner cannot defeat the condemnation by merely showing that some other route would be more practicable and feasible. (*Post, p.* 533.)

Case cited and approved: Railroad v. Campbell, 109 Tenn., 655.

FROM SHELBY.

Application by defendants for certiorari and supersedeas made to the supreme court.

CHARLES N. BURCH and A. W. BIGGS, for plaintiff.

THOS. B. TURLEY and HENRY CRAFT, for defendants.

MR. JUSTICE M'ALISTER delivered the opinion of the Court.

This is a proceeding by the Memphis & State Line Railroad Company to condemn for railroad purposes a tract of land owned by the Union Belt Railway Company lying within the corporate limits of the city of Memphis. The property is generally described as a tract of land in the Fifteenth Ward of the city of Memphis, triangular in shape and lying between the tracks of the Nashville, Chattanooga & St. Louis Railroad Company and the Union Railway Company.

The petitioner alleges that it is now engaged in laying a line of track on its railroad from a point where the Yazoo and Mississippi Valley Railroad crosses the State line between the States of Tennessee and Mississippi, to the town of Woodstock, in the county of Shelby, State of Tennessee, and that for said purpose it is necessary that the petitioner should have a portion of the land

Railroad v. Railway.

above described, as an easement or right of way for its road.

It is also averred that the petitioning railroad company is obliged, in reaching said described land, to cross the track of the Union Belt Railway Company, and it asks the condemnation of a strip of land across said defendant's railroad track. The portions of the land sought to be condemned are then specifically described; one tract containing .53 acres, more or less, and the other containing .78 acres, more or less.

The defendant filed an answer to the petition in which the right to condemn its land was resisted upon the following grounds:

(1) That the petitioner is not duly incorporated and organized under the laws of the State of Tennessee, and that it has not the right to condemn under its charter and the general laws of the State of Tennessee.

(2) That it is not a bona fide corporation, but is a paper corporation, whereby the Illinois Central Railroad Company, a foreign corporation, is seeking to acquire valuable rights of way and franchises from the State of Tennessee through the county of Shelby and city of Memphis.

(3) That said corporation will not exercise its franchises, and does not intend to engage in the hauling of freight and passengers, and is not a common carrier.

(4) By the charter of the Memphis & State Line Railroad Company, it was limited to construct a road from Etters, Tennessee, to Lake View, Mississippi, points

entirely south of the city of Memphis, whereas the property described in the petition lies in the city of Memphis.

(5) The Memphis & State Line Railroad, which is owned by the Illinois Central Railroad Company, is a parallel and competing line to the Illinois Central Railroad.

(6) The amendment to the charter of the Memphis & State Line Railroad Company was not authorized by law because the line had been finally located before said charter was obtained.

(7) Chapter 39, p. 112, of the Acts of 1887 is unconstitutional, and, if not unconstitutional, is repealed by implication by chapter 116, p. 271, of the Acts of 1897.

(8) That the property sought to be condemned was not necessary for the purposes and uses of the petitioner.

(9) That the property sought to be condemned is property which was purchased by defendant to be used as storage yards, and the appropriation of this property would amount to the destruction of said yards and cripple the defendant in its service of the public and the carrying on of its business, and do it irreparable injury.

(10) The property sought to be condemned is situated wholly within the limits of the city of Memphis, and the petitioner has not obtained permission or secured a franchise from the city of Memphis for the purpose of building this line through said city or any part thereof.

Proof was taken, and on the hearing, his honor, A. B. Pittman, circuit judge, upon consideration of the whole case, ordered, adjudged, and decreed as follows:

First. The defenses set up in the answer and amendment thereto are not well taken, and the same are all disallowed.

Second. The petitioner, Memphis & State Line Railroad Company, is, under its charter and amendment thereto and by the laws of the State of Tennessee, authorized to condemn the property of defendant company for the purpose of constructing and operating a line of railroad as described in the petition.

Third. It is necessary to take the property of defendant described in the petition for that purpose and to condemn a crossing of the track of defendant Union Railway Company, as therein set out.

Fourth. The petitioner is entitled to have set apart for its use as an easement or right of way for the construction and operation of a double track across the lands and tracks of defendant the following described land, viz.: "A strip of land not exceeding one hundred feet in width across the tracks and right of way of the Union Railway company in the fifteenth district of Shelby county, Tennessee, in the city of Memphis, which was then more particularly described by metes and bounds, containing in all .53 acres, more or less;" also another tract of land lying in the fifteenth district of Shelby county and adjacent to the above-described tract, which was

then specifically described by metes and bounds, and containing .78 acres, more or less.

A jury of view was then appointed to lay off said land by metes and bounds over the lands of the defendant, and to assess the damages. The jury of view set apart for the Memphis & State Line Railroad as an easement or right of way for the construction and operation of a double-track railroad across the tracks and right of way of the defendant, a strip of land seventy feet in width across the tracks and right of way of the Union Railway company in the fifteenth civil district of Shelby county, Tennessee, in the city of Memphis, which was then specifically described by metes and bounds, containing in all .53 acres.

The jury of view also set apart to the petitioner as an easement or right of way over the lands of the defendant company another strip of land one hundred feet in width, lying in the fifteenth civil district of Shelby county, Tennessee, and adjacent to the strip above described, which was then more particularly described by metes and bounds, and containing .78 acres, more or less.

The jury of view assessed the damages for the value of said easement, as well as the incidental damages to the residue, of both of said tracts, at $5,000. The report of the jury of view was in all things confirmed by the circuit court. A writ of possession was then awarded the Memphis & State Line Railroad Company upon the execution of a bond in the sum of $10,000, payable to the

Union Railway Company and others, and conditioned to abide by and perform the final judgment to be rendered in this cause.

At this point the Union Railway Company filed a petition in this court for writs of certiorari and supersedeas to arrest the occupation of this land by the petitioning railroad company and to remove said cause into this court for a trial.

It is insisted on behalf of the Union Railway Company that the property sought to be condemned and appropriated by the Memphis & State Line Railroad Company is not within the route of the latter company as authorized by its charter and finally located by it. The record reveals that the Memphis & State Line Railroad Company was chartered on the 21st day of July, 1903, under the general incorporating act of 1875 (Acts 1875, p. 142, c. 142), "for the purpose of constructing a railroad from a point at or near the south margin or boundary of the city of Memphis in a southwesterly direction to a point at or near where the Yazoo & Mississippi Valley Railroad crosses the Mississippi and Tennessee State line." Two years after the incorporation of said road, and on the 27th day of July, 1905, under an amendment to the charter, the board of directors adopted a resolution fixing the northern terminus of the Memphis & State Line Railroad at Woodstock, a point in Shelby county some miles north of the city of Memphis.

The right of way sought to be condemned is situated

between McLean and Cooper avenues in the city of Memphis, and several miles distant from the original chartered route, but within the new route as fixed by the board of directors of said company on July 27, 1905.

It is said on behalf of the Union Railway Company that this action of the board of directors of the petitioning company was illegal—first, because chapter 39, p. 112, of the Acts of 1887, under which the petitioning company, through its board of directors, adopted the amendment to the charter, is unconstitutional; and, second, that, if constitutional, it is inapplicable, since the Memphis & State Line Railroad Company had already and finally located its route.

It is claimed that under the original charter the route was fixed from Lake View, Mississippi, to Etters, Tennessee, or East Junction, about three miles from the south boundary of the city of Memphis. This fact, it is said, is shown in the first condemnation suit, which was brought in October, 1903, for the purpose of building, as stated in the petition, a road from Lake View, Mississippi, to Etters, Tennessee, and reciting the fact that at that time the road was being built.

It is further said that the entire right of way was acquired from East Junction to Lake View, and the road as originally incorporated was treated as completed.

The following contentions are made on behalf of the Union Railway Company in respect of the invalidity of the action taken by the board of directors of the petitioning company, under chapter 39, p. 112, Acts of 1887:

Railroad v. Railway.

First.    Said act authorizes the railroad company to
amend its charter by a mere resolution of its board of
directors, and is unconstitutional  because it amends
prior laws without stating the title or substance of the
laws to be amended.  Second.  This special act of 1887 is
repealed by implication by chapter 116, p. 271, Acts of
1897.  Third.  Chapter 39, p. 112, Acts of 1887, even if
in force, gave the right to amend the charter by a resolu-
tion of the board of directors only before the final loca-
tion of the line, of road.  The line of road of the Mem-
phis & State Line Railroad Company had not been final-
ly located prior to July 25, 1905; hence chapter 39, p.
112, Acts of 1887, could not apply.  Fourth.  Chapter
39, p. 112, Acts of 1887, requires that the resolution
shall be signed and certified by the president and secre-
tary of the company, and it is claimed this was not done.
It is said M. Gilleas, who signed as president, was the
ex-president, and R. T. Cooper the ex-secretary, at the
time of the signing and certifying of the resolution in
question.

We shall first consider the assaults made on the con-
stitutionality of chapter 39, p. 112, Acts of 1887.  That
act in its entirety is as follows:

"An Act to enable any railroad company, incorporated
     under the general laws of this State, to change either
     of its termini at any time before the final location
     of its line of railroad.

"Section 1.  Be it enacted by the general assembly of
the State of Tennessee, that any railroad company incor-

porated under the general laws of this State may, by
resolution of its board of directors, change either termi-
nus of its line of railroad at any time before the final
location of the same.

"Sec. 2.  Be it further enacted, that said resolution
shall be certified by the president and secretary of the
company under its corporate seal and filed and register-
ed in the office of the secretary of State, and when the
secretary of State certifies to the registration of the
same, under the great seal of the State, the amendment
shall be complete and take effect as if originally incor-
porated in the charter of the company.

"Sec. 3.  Be it further enacted, that this act shall take
effect from and after its passage, the public welfare re-
quiring it."

It is claimed on behalf of the Union Railway Com-
pany that this act amends and is intended to amend
chapter 142, p. 232, of the Acts of 1875, and is uncon-
stitutional because it does not recite, in its caption or
otherwise, the title or substance of the latter act, in
violation of article 2, section 17, of the State constitu-
tion.  That section is:  "All acts which repeal, revive
or amend former laws shall recite in their caption, or
otherwise, the title or substance of the law repealed,
revived or amended."

We are of opinion this provision of the constitution
does not apply to the act in question.  This act is not
an amending act, and does not on its face purport to
amend, repeal, or revive any former law.  It is a new

and substantive act, conferring additional powers upon railroad companies incorporated under the general laws of the State. Moreover, the act is not confined to corporations then in existence, but it is a general law, and may apply as well to corporations thereafter chartered. Moreover, the holdings of this court are uniform that this provision of the constitution only applies to acts which expressly purport to repeal, revive, or amend, and does not relate to statutes which repeal or amend former laws by necessary implication. As said by this court in *Henley* v. *State*, 98 Tenn., 665, 41 S. W., 352, 1104, 39 L. R. A., 126: "This is not an amendatory act. It is a new and original law. If it can be held to be a repealing law or an amending law, it is only so by necessary implication, and in such cases the acts repealed or amended need not be referred to in the caption or certificate of the new law"—citing *Home Ins. Co.* v. *Taxing District*, 4 Lea, 644; *Maney* v. *State*, 6 Lea, 218; *Railroads* v. *Crider*, 7 Tenn., 506, 19 S. W. 618; *Knoxville* v. *Lewis*, 12 Lea, 181; *State* v. *Yardley*, 95 Tenn., 546, 559, 32 S. W., 481, 34 L. R. A., 656; *Ballentine* v. *Pulaski*, 15 Lea, 633; *Poe* v. *State*, 85 Tenn., 495, 3 S. W., 658; *Hunter* v. *Memphis*, 93 Tenn., 571, 26 S. W., 828; *Memphis Street R. R. Co.* v. *State*, 110 Tenn., 598, 75 S. W., 730.

The cases of *Shelton* v. *State*, 96 Tenn., 521, 32 S. W., 967, and *Memphis Street Ry. Co.* v. *State*, 110 Tenn., 598, 75 S. W., 730, relied on by appellants, did not pre-

sent a question of repeal or amendment by implication of law, but involved acts of express amendment which did not set out the title or substance of the law amended. In both of these cases, however, the rule of amendments by implication is recognized. Nor is it true, as contended by counsel for appellants, that repeals by implication apply only to police regulations, for an examination of our cases will show that the rule has been applied to all classes of legislation. The following cases illustrate the variety of legislation to which the rule was applied: *Home Ins. Co.* v. *Taxing District,* 4 Lea, 644; *Ballentine* v. *Mayor,* 15 Lea, 633; *Railroad* v. *Sadler,* 91 Tenn., 508, 19 S. W., 618, 30 Am. St. Rep., 896; *Memphis* v. *American Express Co.,* 102 Tenn., 336, 52 S. W., 172; *Tyler* v. *King,* 104 Tenn., 163, 57 S. W., 150.

The second contention made on behalf of the Union Railway Company is that chapter 39, p. 112, Acts of 1887, is repealed by chapter 158, p. 303 of the Acts of 1889; but the latter act does not by express language undertake to repeal the former, and there is no such repugnancy between the two acts as to work a repeal by implication. Indeed, the two acts relate to different subjects. That of 1887 provided for the changing of the terminus of a railroad which had not been finally located, while the act of 1889 has reference to the building of branch lines.

Second. The next assignment of error is that chapter 39, p. 112, of the Acts of 1887 is repealed by implication by chapter 116, p. 271, of the Acts of 1897, and that

chapter 39, p. 112 of the Acts of 1887, is obsolete. It is said that the Union Railway Company amended its charter in accordance with the act of 1897, which was upheld by this court in the case of *Collier* v. *Railroad,* 113 Tenn., 101, 83 S. W., 155, and that the charter of the Tennessee Central Railroad Company was amended in the same way. *Tennessee Central Railroad Co.* v. *Campbell,* 109 Tenn., 663, 73 S. W., 112.

It is conceded that chapter 39, p. 112, of the Acts of 1887 is not expressly repealed by chapter 116, p. 271, of the Acts of 1897, but it is claimed that it is repealed by implication. It is well settled that repeals by implication are not favored, and the repugnancy between the latter and the former act must be wholly irreconcilable in order to work a repeal of the former. As was said in *Frazier* v. *Railroad* Co., 88 Tenn., 138, 12 S. W., 537: "Repeals by implication are not favored. An act will never be held to repeal by implication another act unless it clearly appears that the two acts cannot stand together. The repugnancy between the two acts must be plain and unavoidable." *Buchanan* v. *Robinson,* 3 Baxt., 152; *Home Ins. Co.* v. *Taxing District,* 4 Lea, 644; *Fisher* v. *Baldridge,* 91 Tenn., 418, 19 S. W., 227; *Blaufield* v. *State,* 103 Tenn., 600, 53 S. W., 1090.

It is said the act of 1887 is a special or particular act, having reference alone to railroad companies and to such only as have not made a final location of its road, while the act of 1897 does not especially refer to railroad corporations, but embraces all corporations.

We are of the opinion that the act of 1887 is not repealed by the act of 1897, by implication of law.  Sutherland, in his work on Statutory  Construction (sections 107, 108), says:  "The purpose of a general act relative to a given subject may harmonize with a different purpose on that subject in a particular locality or under special conditions, or as it affects a particular interest or a particular person or class. It may harmonize in the sense that both purposes may be effectuated.  The purpose of the general law may be carried out, except as to the particulars in which a different intention is manifested.  It is a principle that a general statute without negative words will not repeal by implication from their repugnancy the provisions of a former one, which is special or local, unless there is something in the general law or in the course of legislation upon its subject-matter that makes it manifest that the legislator frames a statute in general terms or treats a subject in a general manner.   It is not reasonable to suppose that he intends to abrogate particular legislation to the details of which he had previously given his attention, applicable only to a part of the same subject, unless the general act shows a plain intention to do so."

Black on the Interpretation of Laws, p. 116, says: "It has come to be an established rule in the construction of statutes that a subsequent act, treating a subject in general terms and not expressly interdicting the provisions of a prior special act, is not to be considered as intended to affect the more particular and specific

provisions of the earlier act, unless it is absolutely nec-
essary so to construe it in order to give its words any
meaning at all."

So it is said in Endlich on Interpretation of Statutes,
section 223: "A later general law does not abrogate an
earlier special one by mere implication. It is usually
presumed to have only general cases in view and not par-
ticular cases which have already been provided for by
the special act."

These general principles have been fully recognized by
this court and applied in the cases of *Frazier* v. *Railway
Co.,* 88 Tenn., 163, 12 S. W., 537; *Burnett* v. *Maloney,*
97 Tenn., 705, 37 S. W., 689, 34 L. R. A., 541; *State* v.
*Nashville Savings Bank,* 16 Lea, 122; *State* v. *Wilson,*
12 Lea, 251.

These principles are well applied to the facts of this
case on the brief of counsel for appellee, as follows:
"Coming now to the case at bar, we are first confronted
with the proposition that repeals by implication are not
favored; and, secondly, by the proposition that acts re-
lating to a special or particular subject are not presum-
ed to be repealed by general acts unless such intention
is absolutely clear. The act of 1887 is an act relating
to a very limited and narrow subject, to wit, railroad
companies which have not made a final location of their
lines. The act of 1897 has reference to obtaining amend-
ments by corporations in general. The acts are not nec-
essarily inconsistent nor repugnant. The fields in which
they operate are different. Nor is the act of 1897 man-

Railroad v. Railway.

datory in its character. It is merely permissive, granting to corporations in general the right to obtain amendments to their charters in a certain way. It is not at all in conflict with the act of 1887 granting to railroad companies the right to change their termini at any time before final location of the road. If it is possible to preserve both laws by any construction, both will be preserved, and there is no such overwhelming necessity as would constrain the court to hold the special act of 1887 repealed by the act of 1897. The act of 1897 was intended to afford a means for the amendment of charters of corporations in general as to which no means of amendment then existed. It was not intended to repeal special acts like the act of 1887, which has reference to railroad companies only. The act of 1897 was intended as an addition to the law on the general subject of amendment and not to repeal special laws in existence."

We may add that the act of 1887 is not a special law in the sense that special laws may not be passed creating corporations, or increasing or diminishing their powers. Article 11, section 8, constitution of Tennessee. The term "special laws," used in that instrument, means laws for the benefit of particular corporations, designating them by name.

We are of opinion, for the reasons stated, Acts 1887, p. 112, c. 39, is not repealed by Acts 1897, p. 271, c. 116.

The third assignment of error is that, conceding the constitutionality of chapter 39, p. 112, Acts 1887, it conferred no authority on the board of directors of the Mem-

phis & State Line Railroad Company by resolution to change the northern terminus of said road to Woodstock in the county of Shelby, for the reason that before said amendment had been procured the line of the Memphis & State Line Railroad Company had been finally located.

The trial judge was of opinion on the record below that prior to the amendment of the charter on the 27th day of July, 1905, there had been a final location of the road between East Junction and Lake View. The opinion of the circuit judge that there had been a final location of the petitioner's road, prior to the amendment of its charter, is supported by the testimony of Edmonds and Gill, two of the original directors of the Memphis & State Line Railroad Company, the witnesses Garvey, Tarber, and McCague, and also by certain recitals in the petitions filed for the condemnation of real estate as an easement or right of way for said line of railroad and by the map filed in the railroad commissioner's office.

Said railroad, through its counsel, on the 11th of November, 1904, filed a petition in the circuit court of Shelby county, asking the condemnation of certain property, and therein alleged "that it is now engaged in laying a line of track on its railroad between Lake View, Mississippi, and Etters, Tennessee," etc.

Counsel for appellee, while conceding that the line had been located from Etters or East Junction to Lake View, and land between these points had been condemned for a right of way, at the date of the amendment to the charter, to wit, on the 27th day of July, 1905, still in-

sist no final location of the line of the road had been made. As already stated, the charter of the company authorized it to locate a line of railway "from a point beginning at or near the southern margin or boundary line of the city of Memphis, Shelby county, Tennessee, thence in a southwesterly direction to a point at or near where the Yazoo and Mississippi Valley Railroad crosses the State line between Mississippi and Tennessee in said county of Shelby." It is shown that East Junction is not "at or near" the southern margin of the city of Memphis, but is distant at least three miles from the corporate limits; and it is insisted that East Junction or Etters had not been fixed as the northern terminus of said road, and there had been no final location of the line, when the charter amendment was adopted.

It appears that in the latter part of 1903 and the early part of 1904 the Memphis & State Line Railroad Company instituted condemnation suits for its right of way, beginning at the southern terminus of the proposed line, Lake View, on the Yazoo & Mississippi Valley Railroad, at or near where that railroad crosses the Mississippi and Tennessee State line. It continued to acquire land for right of way between Lake View and East Junction, both by purchase and by condemnation proceedings. The line of road had been surveyed and located and its right of way acquired to East Junction, when the company constructed its line from East Junction to Etters on the Yazoo and Mississippi Valley south and west of East Junction.

Railroad v. Railway.

It is not claimed that up to this time the Memphis & State Line Railroad Company had projected its line by any survey north of East Junction. It further appears that, after acquiring its right of way by purchase and condemnation from Lake View to East Junction, some time elapsed before said railroad company took any additional steps toward locating the remainder of its line, and from this fact it is insisted by counsel for Union Railway Company that the Memphis & State Line Railroad Company had adopted East Junction as its northern terminus and Lake View as its southern terminus, and that the whole road had been completed.

Mr. Gill, who was a director of the Memphis & State Line Railroad for about one year, stated that East Junction was selected by the board of directors as the northern terminus of the road, but in the same connection states that his recollection was that the charter called for East Junction as the northern terminus of the road. In this he was clearly mistaken, and his recollection as to the action of the board of directors may be as uncertain.

Mr. Edmonds, who was also called as a witness upon behalf of the Union Belt Railway Company, had no positive recollection as to the selection of East Junction as the northern terminus of the road, and on cross-examination stated that no definite point for the northern terminus of this road was fixed by the board of directors while he was a member of it. He further stated that the work of building the road was begun at Etters and trav-

eled southwesterly, but he afterwards explained that by stating that the company began securing rights of way at Etters and proceeded southwesterly to Lake View.

Witness further stated that while he was a member of the board of directors the line of this railroad was extended from Etters over to East Junction, and that these points are east and west of each other and are distant from Trigg avenue, the southern boundary of the city of Memphis, some three or four miles.

Judge Tim E. Cooper, who was a director of the Memphis & State Line Railroad Company and its attorney in the condemnation proceedings, was examined as a witness and testified that he did not understand "that the road was to stop where those condemnation proceedings stopped. My understanding was that the road was to run further north than Etters. I always had that idea. I never considered Etters the northern terminus."

Judge Cooper was then asked: "What point, then, in your mind, was the northern terminus of this road, in the fall of 1903, at which time you were filing this large number of condemnation suits? A. I say that, up to the time that this line was fixed by the board of directors, I never considered it was fixed at all. I had the distinct impression that that northern terminus would be somewhere north of any property owned by the railroad company, or which we had sought to condemn."

The exact question propounded by counsel for appellant is "whether or not a railroad company chartered to construct and operate a railroad between the termini

named in its charter, which, beginning at one terminus, has acquired a portion of its right of way, and to that extent only had located its line, but which has neither by the adoption of a survey, by resolution of its board of directors, nor by the acquiring of right of way in any manner, located the remainder of the line — whether such company has power to change the other terminus."

The affirmative of that proposition is maintained on behalf of the Memphis & State Line Railroad Company. In support of this position, counsel calls attention to the use of the term "final location" in the act of 1887. It is insisted this term indicates there may be a location of the road by the company which may be afterwards changed and another location adopted. It is said this act also recognizes the right of the railroad company to change either terminus of its line at any time before the final location of its entire line. It is insisted no attempt is being made in this case to relocate any part of the line; that the extension of the road to Woodstock as a northern terminus was clearly authorized by the act of 1887, by mere resolution of the board of directors, as was done in this case.

Counsel for the Union Belt Railway Company cited numerous authorities in support of the proposition that "final location" is the location upon which the officers of the road finally decide to build. As soon as the location is reached, which is then satisfactory, and upon which the proper officers decide to build the road, that is the final location, and is an exhaustion of all discre-

tion theretofore existing in the company, and is irrevocable. This, we think, a correct formulation of the rule.

It is then said, the termini having been located in November, 1903, at Etters, Tennessee, and Lake View, Mississippi, all discretion was exhausted and the right to change the termini at an end. It is said that it is futile for the Memphis & State Line Railroad to insist that the northern terminus was never fixed and that the directors had in their mind an intention of going further than the northern terminus named in the charter. Counsel insists that it is a question of the location of the line of road, and not the location of the termini. Emphasis is laid on the caption to chapter 39, p. 112, Acts of 1887, as follows: "An act to enable any railroad company incorporated under the general laws of this State, to change either of its termini at any time before the final location of its line of railroad."

It is insisted that it is thus shown from the caption of the act that it is the location of the line of railroad that is in question, and not the location of the northern terminus. Conceding this proposition to be true, we are of opinion there had not been, at the date of the adoption of the amendment, such a final location of the line as to preclude a change of termini under the act of 1887.

The fifth assignment of error is that the Memphis & State Line Railroad Company is controlled by the Illinois Central Railroad and they are parallel and competing lines, and the enterprise, being thus illegal, will not be aided by the courts.

Railroad v. Railway.

We find no proof in the record that the Memphis & State Line Railroad Company is controlled by the Illnois Central Railroad Company, or that the latter corporation owns any stock in the former. Moreover, as is well said by counsel, the object of legislation in Tennessee in regard to parallel and competing lines is to prevent the consolidation or acquisition of one railroad by a parallel and competing railroad. There is no legislation which prohibits a railroad from building or causing to be built a railroad parallel to its own. It does not appear from the present record that these railroads could possibly come within the inhibition of parallel and competing lines; but it is unnecessary to pursue this question, since it cannot be raised in this collateral way. Judge Lurton, in *Rogers* v. *N. C. & St. L. Railway,* 91 Fed., 299, 33 C. C. A., 517, after a consideration of our legislation on the subject of parallel and competing roads, said: "If therefore the Louisville & Nashville Railroad Company has exhausted its charter or legislative powers in either State, it is because it acquired a parallel and competing line of its own original and authorized line. If this is prohibited in Kentucky, it is because such a purchase is in violation, not of its general power, but of the constitutional prohibition found in section 201 of the constitution of Kentucky. If prohibited in Tennessee, it is because of some public policy which has not yet found expression in any affirmative legislative prohibition. In neither event is the question one which can be raised in this collateral way by this complaint."

The seventh assignment of error is that the property of the Union Belt Railway is situated entirely within the city limits, and that the Memphis & State Line Railroad Company has not secured a franchise from the city of Memphis to operate its road within the city, or to cross its streets and alleys, and that this is a condition precedent to the right of appropriating property within the city.

On this point we agree with the learned trial judge that the city could not, by withholding its consent, defeat the exercise of eminent domain possessed by the railroad company in locating its line of road through the city, but at most the only power of the city would be to regulate the location and construction of the road. Moreover, we do not think this is a question that can be raised by the Union Belt Railway Company on behalf of the city. In the case of *Collier* v. *Union Belt Railway Co.*, 113 Tenn., 126, 83 S. W., 155, one of the grounds upon which Collier resisted the right of the Union Railway Company to condemn his land was that it was illegally occupying Buntyn avenue. On this point the court said: "But we are unable to see how this is a matter of which Collier and wife can complain. If the railroad is occupying the highway improperly, it may be enjoined in a proper proceeding; but the point does not appear to be raised in the proof in the case, and is, we think, immaterial so far as the rights of Collier and wife are concerned."

Mr. Lewis, in his work on Eminent Domain (volume

2, section 395), thus states the rule: "The courts cannot dictate the order in which the petitioner shall proceed to acquire property or rights. Hence a railroad company may condemn the right to lay its tracks in a street before obtaining the consent of the municipal authorities to occupy the streets. So it may condemn private property on the line selected in a city before it has obtained consent of the city to cross intervening streets." *Cal. Southern R. R. Co. v. Kimball,* 61 Cal., 90; *Metropolitan Street R. R. Co. v. Chicago R. R. Co.,* 87 Ill., 317; *Chicago & Western Ind. R. R. Co. v. Dunbar,* 100 Ill., 110; *Matter of Gilbert Elevated R. R. Co.,* 70 N. Y., 361; *Stoughton v. Paul,* 173 Mass., 148, 53 N. E., 272.

The sixth assignment of error is that the property sought to be condemned is a portion of the yards of the defendant, and that under the law the yards of a railroad company cannot be appropriated unless it is evident that the condemning road cannot be constructed without it and that there are other routes more practicable and feasible than the one in question, which would not destroy the valuable yards of the defendant.

The general subject of the right of one public service corporation to condemn the property of another corporation was fully considered by this court at the present term in an opinion delivered by Mr. Justice Neil in the case of *Memphis State Line R. R. Co. v. Forest Hill Cemetery Co.,* 116 Tenn., 400, 94 S. W., 69. It was therein held, approving the rule laid down by Mr. Lewis in his work on Eminent Domain, that "land owned by a company

whose business constitutes a public use, not in actual use nor essential to the exercise of its franchise, stands on the same footing as that of a private individual, and may be condemned by another corporation, under the general laws, although the land is taken from the actual and profitable use of the owner. Nevertheless, there must be a liberal consideration of the fact, as well as the existing needs of the company whose land is sought to be appropriated, before it can be deprived of any portion thereof; but the mere possibility that the land sought to be taken may at some future time become necessary to the exercise of the franchise of the company owning it does not exempt it from condemnation, and neither does the fact that the property is put to a use not necessary to the exercise of the franchise."

Chapter 135, p. 245, Acts Tenn., 1885, was cited as legislative authority for subjecting the property of quasi public corporations to the right of eminent domain. That act provided that our general statutes conferring the right of eminent domain shall be so extended as to "apply to and include the condemnation and taking of the property, privileges, rights or easements of private corporations for public purposes or internal improvements."

It was further held that this statute was only declaratory of the law already existing under the limitations stated in the opinion. It was further held that nothing in our former rulings on this subject was intended to hold that under the statute quoted property already devoted

to one public use, could be condemned for another public use, to the injury of the corporation so subjected, when there was no necessity for such condemnation in order to effect the purposes of the corporation seeking the condemnation.

In addition to the authorities cited in that opinion, in volume 1, section 267 of Lewis on Eminent Domain, it is said: "Under a general authority, one railroad company cannot build through the yards of another, or take its depot or other appurtenances necessary to the transaction of its business." In section 268, vol. 1, the same author says: "A crossing cannot be made through the yards of the first company, when such crossing would practically destroy the utility of the yards, unless the necessity be so great as to make the new enterprise of paramount importance to the public, and it cannot be practically accomplished in any other way."

The law, then, on this subject being fully stated in the authorities cited, two questions arise: (1) Whether the strip of land sought to be taken for right of way of the Memphis & State Line Railroad Company constitutes a part of the yards of the Union Belt Railway Company; and, secondly, whether this strip of land is necessary to the transaction of defendant's business.

Evidence was introduced on behalf of the Union Railway Company tending to show that this strip of land had been acquired in conjunction with the entire lot

purchased for the purposes of a yard, and that for such purposes it was valuable to the Union Railway.

There is also evidence tending to show that the route of the Memphis & State Line Railroad through these yards, marked B on the blue print, is not the most practicable and feasible route; that there are two other routes, marked A and C on the blue print, which could have been adopted; and that route A would entirely avoid these yards, and is in every respect the preferable route.

As to the contention that this strip of land cannot be taken because it is a part of the yards of the Union Railway Company, the record shows that it had not been used for that purpose, nor was any effort made in that direction until the day after the present condemnation suit was instituted, when the defendant company began to do some grading and claimed the property in question as yards. While this property had been owned by the defendant company for several years, no use whatever was made of it, and by reason of its small area and triangular shape it is wholly unsuitable for yard purposes.

In Lewis on Eminent Domain, vol. 1, section 276c, it is said: "The general rule will not be applied to prevent the taking of a small and immaterial part of some of the appurtenances of one railroad company, when the taking is necessary for the right of way of another company, or other imperative use." With the lines of the Memphis & State Line Railroad Company extended across this

property, it is still practicable for the Union Railway Company to reach it.

. Again, the authorities hold that, in determining the question whether the property sought to be condemned is already used for public purposes regard should be had to the present use of the property, and not to some use to which it may be expected to be appropriated in the future. In *Col. Eastern R. R. Co.* v. *Union Pacific R. R. Co.* (C. C.), 41 Fed., 293, the condemnation was sought to be avoided upon the ground that the company intended the property involved for use as yards. The court said: "Without imputing to the defendant company the selfish and indefensible motive of being actuated, in the acquisition of this land, by a desire to obstruct the access of the Burlington Road to the union depot, the very utmost that can be conceded to the defendant is that it entertained the belief that this piece of ground might become necessary to the full accommodation of its business in the future, and that it expects to so apply it. This is but a prospective dedication which may or may not ever be made. . . . In view of the greater necessity to the petitioner, as already demonstrated, I feel constrained to hold both on reason and authority that this mere prospective use by the defendant should yield to the more immediate necessities of the petitioner" —citing many cases. See, especially, *Chicago & N. W. R. R. Co.* v. *Chicago, etc., R. R. Co.*, 25 Am. & Eng. R. Cas., 164. Moreover, we find from the record that the Union Railway Company has condemned or purchased other lands for

yard purposes, and that the triangular strip of land sought to be condemned in this case, and necessary for the right of way of the Memphis & State Line Railroad Company, is not now actually used, nor is it necessary for yard purposes.

Finally, it is said that at least two other routes could have been adopted by the Memphis & State Line Railroad Company in locating its road by which the land of the Union Belt Railway Company would have been entirely avoided, and that either of those routes is preferable to the one actually selected. But, on the other hand, we have the testimony of the engineer of the Memphis & State Line Railroad Company to the effect that the line adopted is the most feasible and practicable line that could be constructed.

The engineer shows that if line A, which the defendant now insists is the preferable route, had been selected, the road would have crossed eight streets, while the line as at present projected would only cross two streets. This, of course, is a matter that would enter largely into the selection of the line, since a railroad would desire to avoid as many public streets as possible, on account of the danger of such public crossings.

We cannot say from the evidence submitted that other and equally practicable routes were open to the Memphis & State Line Railroad Company, whereby the lands of defendant might have been avoided. It is, moreover, a matter left largely to the discretion of the petitioning company and its executive officers. Mr. Lewis, in his

Railroad v. Railway.

work on Eminent Domain (page 891), says: "It may be objected that there is no necessity for condemning the particular property, because some other location might be made or other property obtained by agreement. But this objection is unavailing. Except as specially restricted by the legislature, those invested with the power of eminent domain for a public purpose can make their own location according to their own views of what is best or expedient, and this discretion cannot be controlled by the courts." This principle was recognized in *Tenn. Central R. R. Co.* v. *Campbell,* 109 Tenn., 655, 73 S. W., 112, wherein it was said: "Discretion as to the location of the line is vested in the company, provided there is not a substantial departure from the course and direction indicated by the charter."

We are therefore of opinion there is no error in the judgment and proceedings below, and the petition for writs of certiorari and supersedeas will be refused.