## The East St. Louis and Carondelet Railway Co.

*v.*

## The Belleville City Railway Company.

*Filed at Mt. Vernon January 20, 1896.*

1. RAILROADS—*proof of existence prior to constitution of 1870.* Affirmative evidence that a railroad company asserting the right of eminent domain was organized or in operation prior to or within ten days after the constitution of 1870 took effect, is not necessary where *prima facie* evidence of the then corporate existence is furnished, by showing its charter and user thereunder.

2. SAME—*power of, to compel connections with other roads.* Power to compel connection with another railroad in a, city exists in favor of a railroad whose charter provides that it may construct its road across the track of another road when necessary, and also gives it the rights conferred by statute, which provides (Laws of 1872, p. 631, par. 6,) that every railroad corporation shall have power to cross, intersect, join and unite its railroad with any other, etc.

3. EMINENT DOMAIN—*proper procedure to compel connection between railroads.* The right to form connection by one railroad with another may be obtained by procedure under the Eminent Domain act of 1872, (Laws of 1872, p. 402,) as a cumulative, if not the only, remedy which applies to such case.

APPEAL from the County Court of St. Clair county; the Hon. E. C. RHOADS, Judge, presiding.

TURNER & HOLDER, and T. J. GOLDEN, for appellant:

The provisions of a special charter or a special authority derived from the legislature are not affected by subsequent general legislation on the subject, nor by a change in the State constitution, unless the power to amend has been reserved. 1 Beach on Private Corp. sec. 26.

The taking of private property for public use without the consent of the owner, being in derogation of common right, the grant of power to corporations for its exercise must be strictly construed. *Railroad Co. v. Wiltse,* 116 Ill. 449; *Railroad Co. v. Railroad Co.* 31 N. J. L. 205; *Morehead v. Railroad Co.* 17 Ohio, 340.

The appellee could not proceed to condemn under both its charter and the general law. It must proceed, if at all, under its charter, and not under the general law. *Railroad Co.* v. *Outwater,* 3 Sandf. 689; *Railroad Co.* v. *Laurie,* 63 Ill. 264; *Railroad Co.* v. *Chicago,* 148 id. 160; *Visscher* v. *Railroad Co.* 15 Barb. 37.

Section 2 of article 2 of the present constitution invalidates all charters under which there was no organization or operation prior to the 18th day of August, 1870.

G. & G. A. Koerner, for appellee:

It is notorious that most of the important railroads of this State are incorporated by special law, but when one of them wishes to exercise any of its corporate franchises it does not follow that it is thereby barred. All that must be shown is a substantial exercise of its powers,— to show that it is a *bona fide,* existing, *de facto* corporation. *Brown* v. *Railway Co.* 125 Ill. 606; *Railroad Co.* v. *Railroad Co.* 105 id. 116.

When a statute gives a new remedy,—one containing no negative, express or implied, of the old remedy,—the new one furnished by it is cumulative, and the party may elect between the two. Sutherland on Stat. Const. sec. 399; Endlich on Interp. of Statutes, sec. 218.

The law does not require the verdict' or report of the jury to specify the land taken. *Railroad Co.* v. *Maynard,* 93 Ill. 691.

Mr. Justice Baker delivered the opinion of the court:

On December 22, 1894, the Belleville City Railway Company filed in the county court of St. Clair county its petition for the condemnation of the right to join and unite its railroad with that of the East St. Louis and Carondelet Railway Company at a designated place in the city of East St. Louis, under the provisions of the Eminent Domain act. On January 11, 1895, it filed its amended petition. A motion to dismiss the amended petition and the proceeding, interposed by the East St. Louis and

Carondelet Railway Company, was denied and an exception taken, and a demurrer to said amended petition was overruled. Thereupon a jury was impaneled, which fixed the compensation to the East St. Louis and Carondelet Railway Company at $350, and the court overruled a motion for a new trial and rendered final judgment that upon payment of said $350 the said Belleville City Railway Company may unite and connect its track with the main track of the East St. Louis and Carondelet Railway Company, and for that purpose may enter upon and have the use of certain specified parts of its right of way. The East St. Louis and Carondelet Railway Company appeals from that judgment.

The amended petition, among other things, states that the petitioner is a railroad corporation duly organized and existing by virtue of the laws of the State of Illinois, operating under a charter granted to it by an act of the General Assembly of the State of Illinois, approved February 25, 1867, entitled "An act to incorporate the Belleville City Railway Company;" that under the provisions of said act it has power to construct a railroad within the city of Belleville, Illinois, and to extend the same to any point in St. Clair county, Illinois; that it has commenced the construction of a railroad within the city of Belleville, and has extended the same to the city of East St. Louis, within said county, and it is now completed to the right of way of the East St. Louis and Carondelet Railway Company, in said city; that the said Belleville City Railway Company has the right, by law, to join and unite its railroad with the railroad track of the said East St. Louis and Carondelet Railway Company, and has, by authority of the act incorporating it and under the several laws of the State of Illinois regulating the incorporation and construction of railroad companies, power to procure such junction and connection under the Statute of Eminent Domain, and desires to join, unite and connect with said defendant railroad company's track, as hereinafter stated.

It is objected that it does not appear, either from the petition or the evidence, that appellee has the necessary corporate existence to give it the right to exercise the power of eminent domain, because it does not affirmatively appear that it was organized or in operation prior to or within ten days immediately succeeding the taking effect of the constitution of 1870, and that therefore, by force of that instrument, its private charter thereafter ceased to have any validity whatever. Appellee, in its petition, alleged its corporate existence, and pleaded its charter and averred the performance of various corporate acts under the same, and it introduced its charter in evidence, and produced testimony tending to show that it was acting as a corporation and exercising the franchises and powers thereby granted. This was sufficient to establish, *prima facie*, the corporate existence of appellee. See *St. Louis, Alton and Terre Haute Railroad Co.* v. *Belleville City Railroad Co.* 158 Ill. 390, and cases there cited.

It is claimed that appellee has no power to make or compel a connection, junction or union of its tracks with those of another railroad. Section 5 of its special charter provides that whenever it shall be necessary for the construction of said railway to intersect or cross a track of any other railroad, or any stream of water or watercourse, or road or highway, on the route of said railway, it shall be lawful for the company to construct its railway across, upon, in, over or along the same. (2 Private Laws of 1867, p. 25.) And said section further provides that appellee "may exercise all the powers conferred upon railroad corporations by an act entitled 'An act to provide for a general system of railroad incorporation,' approved November 5, 1849." And said latter act (2 Sess. Laws of 1849, p. 15; Scates, Treat & Blackwell's Stat. p. 942,) provides in paragraph 6 of section 21 that every railroad corporation shall have power "to cross, intersect, join and unite its railroad with any other railroad before constructed, at any point on its route, and upon the

grounds of such other railroad company, with the necessary turn-outs, sidings and switches, and other conveniences, in furtherance of the objects of its connections; and every company whose railroad is or shall be hereafter intersected by any new railroad, shall unite with the owners of such new railroad in forming such intersections and connections and grant the facilities aforesaid." Said language found in said paragraph 6 is still retained as a part of the statute law of the State, and is a part of the sixth specification in section 19 of the act for the incorporation of railroad companies that is now in force. (2 Starr & Curtis' Stat. p. 1914.) Said sixth specification concludes with this language: "And if the two corporations cannot agree upon the amount of compensation to be made therefor, or the points and manner of such crossings and connections, the same shall be ascertained and determined in manner prescribed by law."

We think that under these statutory provisions, and in view of the policy of the State in regard to the joining and uniting of railroad tracks, there can be no serious doubt of the existence of the power in appellee to make and compel the connection mentioned in its petition.

It is provided in the charter of appellee that it may extend its railways "to any point or points in the county of St. Clair, in this State, and to enable said corporation to construct any and all of the railways herein authorized, or their appendages, the said corporation is hereby vested with power to enter upon and take possession of all such lands and real estate as may be necessary for their construction or maintenance, in the manner prescribed by an act entitled 'An act to amend the law condemning the right of way for purposes of internal improvement,' approved June 22, 1852, and the several acts amendatory thereof, and may exercise all the powers conferred upon railroad corporations by an act entitled 'An act to provide for a general system of railroad incorporation,' approved November 5, 1849. All lands and real

estate so entered upon and taken possession of shall be paid for by said corporation in damages, agreeably to provisions of the act hereinbefore first mentioned." Having in view these provisions of the charter, it is objected that in this proceeding appellee is condemning the property of appellant under the provisions of the Eminent Domain act of 1872, and not under the provisions of the act of 1852 and the several acts amendatory thereof, or of the act of 1849, although said acts of 1852 and 1849 are, in effect, made parts of its charter, and it is in said charter required to proceed "in the manner prescribed" by said acts in exercising the power "to enter upon and take possession of all such lands and real estate as may be necessary for the construction or maintenance" of its railways.

The power to condemn private property for the purposes of its railways is clearly given to appellee, both in express terms in its charter and by the grant therein of all the powers conferred upon railroad corporations by the act of 1849. It is, then, simply a question of the remedy—of the manner in which it shall proceed in the exercise of that power. The Eminent Domain act of 1872 is merely a procedure act regulating the manner in which persons or corporations invested with the right to take private property for public use may accomplish the legitimate results of such right. The remedy (chap. 47, sec. 2,) is expressly made applicable in all cases where the right to take private property for public use without the owner's consent, or the right to construct or maintain any railroad, "has been heretofore or shall hereafter be conferred by general law or special charter."

In view of section 13 of article 2 of the constitution of 1870, which provides that compensation for property taken or damaged for public use, when not made by the State, "shall be ascertained by a jury, as shall be prescribed by law," it may well be doubted whether appellee could have proceeded for the condemnation of property in the manner prescribed by the act of June 22, 1852, since

that act dispensed with a jury. But waiving that inquiry, the act of 1872 furnished a cumulative remedy, if not the only remedy, for the enforcement of the right conferred by the charter of appellee, and we are wholly unable to see any good and valid reason why it cannot employ this remedy afforded by the act of 1872 for the purpose of availing itself of the substantial right that was granted it in its charter.

Some minor objections to the proceedings and the judgment are suggested by counsel, but we think that they are without merit.

We find no material error in the record. The judgment of the county court is affirmed.

*Judgment affirmed.*