THE SUBURBAN RAILROAD COMPANY

*v.*

METROPOLITAN WEST SIDE ELEVATED RAILROAD CO.

193   217
d211   362
193   217
214  4  53

*Opinion filed December 18, 1901.*

1. EMINENT DOMAIN—*lands of railroad corporation not necessary for its purposes may be condemned.* The lands of a railroad corporation not necessary for the purposes of the corporation or the enjoyment of its franchise are subject to the law of eminent domain, the same as lands of individuals.

2. SAME—*change of use is essential to change of ownership by condemnation.* One corporation cannot take, by condemnation, the property of another corporation already devoted to a particular use, for the purpose of applying it to the same use.

3. SAME—*railroad company cannot condemn, longitudinally, the right of way of another company.* A railroad company cannot condemn any part of the right of way owned and used by another company except for the purpose of a connection or intersection.

4. SAME—*previous license to cross street not essential to right to condemn property.* It is not essential to right of a railroad company to condemn property that a license shall be previously obtained from the municipal authorities to construct the railroad across a public street, as such license may be obtained afterwards.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

CLARENCE A. KNIGHT, WALTER L. FISHER, and WILLIAM G. ADAMS, for plaintiff in error:

Property already owned and held by one railroad company for its right of way cannot be taken by another railroad company for its exclusive use unless explicit authority to do so has been granted by the legislature by express grant or by necessary implication. *Railroad Co.* v. *Railroad Co.* 122 Ill. 483; Lewis on Eminent Domain, sec. 267; 10 Am. & Eng. Ency. of Law, 1093, *et seq.* and cases cited.

Property already lawfully appropriated to public use by one corporation cannot be taken away (even by au-

thority of a statute to that effect) from such corporation for the purpose of subjecting it to the same public use in the hands of another corporation, although a joint use might be authorized. *Railway Co.* v. *Railroad Co.* 97 Ill. 506.

Property acquired and held by one railroad company for right of way cannot be condemned by another company for its right of way to the exclusion of the first company, although property held for many other lesser purposes, inferior in character to right of way, may be so condemned to the exclusion of such inferior use by the first company. *Railway Co.* v. *Railroad Co.* 152 Ill. 519; *Railway Co.* v. *Railroad Co.* 112 id. 589.

The power to take the property of another railroad will not be implied unless the necessity is so absolute that without it the grant itself would be defeated. It must be a necessity over which the condemning corporation has no control, and not a necessity created by this corporation itself, for its own convenience or for the sake of economy. 10 Am. & Eng. Ency. of Law, 1095, and cases cited; *Railroad Co.* v. *Trustees,* 43 Ill. 303.

Where one railroad company has in good faith first located its road over a particular right of way it cannot be deprived by a second company of this prior right of location, even if the first company has not actually acquired the land. *Railroad Co.* v. *Railroad Co.* 23 Cal. 325; *Railroad Co.* v. *Railroad Co.* 118 Mass. 391; *In re Railway Co.* 99 N. Y. 23; 2 Wood on Railway Law, sec. 237, pp. 744, 750.

ADDISON L. GARDNER, and FRANCIS W. WALKER, (W. W. GURLEY, of counsel,) for defendant in error:

Plaintiff in error alleges its property was acquired solely for an incline connection with the Metropolitan West Side Elevated railroad; but such incline connection cannot, under the law and the facts in this case, be made, so that there is no such railroad use in contemplation as will preclude the taking of the property by defendant in error. *Railroad Co.* v. *Railroad Co.* 66 Ill. 174.

The property of plaintiff in error, described in the judgment of condemnation, was never acquired by.it for railroad uses and purposes and is not now so used. This is a question of fact, and the finding of the court below is conclusive against the contention of plaintiff in error that the property was acquired for or is devoted to railroad uses.  The mere ownership of land by a railroad corporation not in actual use and not vitally necessary to the exercise of its franchise will not prevent its condemnation by another railroad corporation. *Railroad Co.* v. *Railroad Co.* 66 Ill. 174; *Railway Co.* v. *Railroad Co.* 112 id. 539; *Railway Co.* v. *Railroad Co.* 152 id. 519.

The superior necessities of the public will be considered.  *Railroad Co.* v. *Railroad Co.* 66 Ill. 174.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The parties to this writ of error are both corporations of this State organized under the general Railroad law, and the question involved is whether the defendant in error can lawfully take and appropriate to its use, by the right of eminent domain, property acquired by plaintiff in error for the same public use.

Defendant in error owns and operates an elevated railroad in the city of Chicago, built and operated for a time by another company and acquired by defendant in error through a foreclosure and sale.  The city council of Chicago authorized the company that built the road to construct it and cross streets and alleys from the center of the city to the western limit thereof, which was the center of West Forty-eighth street.  Adjoining the city on the west was the town of Cicero, and its eastern boundary was said center line of West Forty-eighth street.  The company built and operated the road to the east line of said street at a point one-half block south of Harrison street.  Plaintiff in error, the Suburban Railroad Company, owns an electric surface railway running in Harri-

son street through the town of Cicero. It was authorized, by an ordinance passed July 18, 1895, to construct its railway in Harrison street from the center line of said West Forty-eighth street to the west line of said town of Cicero. The ordinance of the town of Cicero was amended, from time to time, so as to permit the Suburban Railroad Company to extend its line from Fiftieth street, between Harrison and the north line of the alley in the adjoining block, and to construct an inclined connection to the elevated road on West Forty-eighth street. There were negotiations between the companies for connections between the two roads by means of such inclined tracks, but no agreement was reached, and the foreclosure suit was begun against the elevated railroad company on January 20, 1897, and a receiver was appointed, who declined to continue the negotiations. In April, 1897, the Suburban Railroad Company commenced a condemnation suit to acquire the right of way through the block west of Forty-eighth street from the terminus of the elevated railroad. On July 7, 1897, the Ogden Street Railroad Company obtained an injunction against the construction by the Suburban Railroad Company of its proposed inclined connection across said Forty-eighth street. The condemnation proceeding still remains pending of record, but was dismissed by agreement on January 28, 1898, as to Charles F. Swigart, one of the defendants. The injunction against building the incline was in force until May 4, 1899, when the bill was dismissed. Pending the negotiations for the connection, a temporary agreement was made on March 27, 1899, by which the Suburban Railroad Company operated its cars over the Ogden street road from Harrison street to a point opposite the terminal station of the elevated road at Forty-eighth street, filling the gap of half a block between the two roads temporarily by that means. The present elevated railroad company was unable to agree upon the terms of the proposed inclined connection. Between May 29 and June

27, 1900, the Suburban Railroad Company acquired, by purchase for its right of way, for the purpose of extending its line to the terminus of the· elevated road and making the connection, all the property necessary except that owned by Swigart. It consists of a thirty-foot right of way running east and west through the middle of the block between West Forty-eighth street and West Fiftieth street, except said property owned by Swigart, and connects with the tracks of the Suburban railroad at Harrison street. In the spring of 1900 another electric surface railroad company was authorized to build a railroad from the west as far east as West Fifty-second street. This was the Aurora, Wheaton and Chicago Railroad Company, and the elevated railroad company formed a scheme to build an incline from its elevated structure at Forty-eighth street to reach the surface east of said Fifty-second street, so as to form a connection there with said Aurora, Wheaton and Chicago railroad. After the Suburban Railroad Company had purchased all the property now in controversy, an ordinance was passed by the city council of the city of Chicago, to which the territory had then been annexed, authorizing the elevated railroad company to extend its road from West Forty-eighth street to West Fifty-second street. The elevated railroad company accepted this ordinance July 16, 1900. The Suburban Railroad Company had formally located its railroad over said right of way and opened negotiations ,with Swigart for the strip in the west end of the block belonging to him. On September 12, 1900, the elevated railroad company located its railroad over the same right of way. By a deed dated September 22 and recorded September 24, 1900, Charles F. Swigart conveyed his property to Joseph W. Kadish, and Kadish quit-claimed it September 24, 1900, to Hermann Benze. Plaintiff in error commenced a condemnation suit against Kadish and. Benze to ascertain the compensation to be paid for the property for its right of way on September 26, 1900, and

on the next day laid temporary tracks on the right of way it had already acquired. On September 28 the elevated railroad company put on record a quit-claim deed from Benze to it, dated September 25, 1900. On September 28, 1900, the elevated railroad company commenced its suit in the circuit court of Cook county against the Suburban Railroad Company for the purpose of taking and appropriating to its use, for its proposed inclined tracks, the right of way and property so acquired and owned by the Suburban Railroad Company. The Suburban Railroad Company moved to dismiss the petition on the ground that the property sought to be appropriated to a public use was already devoted by it to the same use for its right of way, and it also filed a traverse of the averments of the petition. The court heard the motion to dismiss and the issue of fact raised by the traverse, and found against the Suburban Railroad Company and denied its motion to dismiss. A jury was empaneled and sworn, and a witness testified to the value of the property, and judgment was entered authorizing the elevated railroad company to take the right of way upon payment of the compensation awarded. The writ of error in this case was sued out to review that proceeding.

The defendant had a right to locate and build its road, either on the surface or by an incline, over the right of way in question, and it had acquired a right from the municipality to construct its road on the incline to the center of West Forty-eighth street. It had purchased for that purpose the right of way which is sought to be taken away from it by the condemnation suit. The purpose of the suit is to deprive the defendant of such right of way and to appropriate it to the use of the petitioner, so that it may erect thereon a double-track incline to the surface of the ground, substantially like the one proposed by the defendant. The purpose to which the petitioner proposes to devote the property is, in law, precisely the same as the purpose for which it is already held by the

defendant. To vest title in the petitioner would be noth·ing more nor less than a mere change of ownership for the same public use, so that the incline and tracks would be owned by the petitioner rather than the defendant. The defendant had acquired the property sought to be taken before the petitioner took any proceeding to extend its line over the territory, and had filed a petition for condemnation against the only parties in whom the title remained of record, before this proceeding was begun. It had located its road upon the property and laid temporary tracks on the right of way. The evidence shows that the proceeding on the part of the defendant was in good faith, and that plans had been matured and adopted and materials especially adapted to the construction had been manufactured.

The lands of railroad corporations not necessary for any purpose of the corporation or the enjoyment of its franchise are subject to be taken under the law of eminent domain, the same as lands of individuals. This was decided in *Peoria, Pekin and Jacksonville Railroad Co.* v. *Peoria and Springfield Railroad Co.* 66 Ill. 174, where one corporation obtained a lease of land neither in use nor necessary for any purpose of the corporation, but with a view of obstructing the other corporation in the enjoyment of its franchise; and also in *Chicago West Division Railway Co.* v. *Elevated Railroad Co.* 152 Ill. 519, where property used for a horse barn was condemned for a different use. But one corporation cannot take the property of another already devoted to a particular use for the purpose of applying it to the same use. Where there is no change in the use there cannot be a change in ownership, under the law of eminent domain. (*Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co.* 112 Ill. 589.) In this case the proposed use is the same. It appears that petitioner desires to connect with another surface railroad at Fifty-second street, and it is doubtless desirable to run across this property for that purpose without deflect-

ing from the direction of its original line. There is, however, no physical obstacle to its taking another route and reaching the surface without taking this thirty-foot strip. Even in a case where there was no other way to build a railroad, it was held that one corporation could not take any part of the right of way of another company except for the purpose of a connection or intersection. (*Illinois Central Railroad Co.* v. *Chicago, Burlington and Northern Railroad Co.* 122 Ill. 473.) In that case there was an attempt to condemn for railroad purposes a part of a right of way between the rocky bluffs and the eastern bank of the Mississippi river, where there was a physical impossibility of building a road elsewhere. It was decided that there was no right to condemn longitudinally even a part of such right of way necessary for the construction of the new road. There is no such obstacle in this case, but the obvious purpose is to deprive the defendant of its rights in the premises and transfer them to the petitioner. The law does not permit the petitioner to take the property for its benefit from the defendant, which was proceeding, as far as the record shows, in absolute good faith to build its road on the property.

The statute authorizes the defendant to make a connection with the petitioner's road upon the grounds of petitioner with necessary conveniences, and petitioner is required to unite in forming the connection and granting the necessary facilities therefor, and if the two corporations cannot agree upon the compensation to be made and the points and manner of the connection, the same is to be ascertained in the manner prescribed by law. (3 Starr & Cur. Stat. 1896, p. 3235.) The right to form such a connection may be obtained by procedure under the Eminent Domain act. *East St. Louis and Carondelet Railway Co.* v. *Belleville City Railway Co.* 159 Ill. 544.

It is argued that the defendant would have no right to condemn, under the statute, for the connection with the petitioner's road because it has no ordinance giving

it the right to cross the east half of Forty-eighth street. That fact does not affect the right of defendant to condemn the Swigart property or to hold the property it has acquired.  The defendant could select its own route and would have a right to construct its road whether it formed any connection with the petitioner or not.  It could not construct the road across the east part of Forty-eighth street without the assent of the municipality, but it may, without such assent, acquire the right of way and construct its road on every part of the line except across that half of the street.  Its right of way cannot be taken from it by the petitioner on the ground that it has not yet got something else that it may need in the future.  It is not a condition to a condemnation of property that a license should have been previously obtained from the city to locate or construct the railroad across a street.  The consent may be obtained afterward, and it is immaterial when it is secured. (*Metropolitan City Railway Co.* v. *Chicago West Division Railway Co.* 87 Ill. 317; *Chicago and Western Indiana Railroad Co.* v. *Dunbar,* 100 id. 110.)  If the petitioner builds across Forty-eighth street, as its plans contemplate, there will be no necessity for defendant to cross the east part of the street to make the connection; and, at any rate, the question of a license to cross is between the municipality and the defendant, and the fact that a license has not yet been granted does not nullify the steps already taken or operate as a forfeiture of defendant's rights.  In our judgment the ruling of the circuit court was wrong.

The judgment is reversed and the cause is remanded to the circuit court, with directions to sustain the motion of defendant and dismiss the petition.

*Reversed and remanded.*