## TIFT *v.* ATLANTIC COAST LINE RAILROAD CO. *et al.*

1. Any railroad company owning or operating a railroad in this State is authorized to build and maintain such additional depots, tracks, and terminal facilities as may be necessary for the proper accommodation of its business, and to this end is authorized to acquire by purchase or gift and to hold such real estate as may be necessary for such purposes, and, if the same can not be acquired by purchase or gift, it is authorized to acquire the same by condemnation; but before the right of condem-

Appeal and Error 3 C. J. p. 1282, n. 23.
Eminent Domain 20 C. J. pp. 549, n. 43; 565, n. 24; 566, n. 28; 569, n. 70; 571, n. 74; 898, n. 65; 899, n. 68, 69; 972, n. 47.
Railroads 33 Cyc. p. 40, n. 72.

nation can be exercised, the Public Service Commission must first approve the taking of the property or right of way designated for the public use or uses desired.

2. Whether a spur or industrial track is one of public use does not depend upon the number of people whom it accommodates, but rests upon the fact that every one who has occasion to use it may of right do so, and if such track is opened to the public to be used on equal terms by all who may at any time have occasion to use it, so all persons can demand that they be served without discrimination, and not by permission merely, and if such track is subject to governmental control under general laws, and in the same manner as are the main lines of a railroad, then the use is a public one.

(a) It is not essential, in order to make the use of a spur or industrial track a public one, that its use should be opened to all the public; but a facility or instrumentality of transportation may be limited in its use.

3. As a general rule a railroad company must obtain the written consent of the municipal authorities before it can lay a track on a street of any city in this State; but the lack of such permission does not prevent a railroad company from exercising the right of eminent domain to condemn a municipal alley as a right of way for the extension of one of its tracks in such alley for public use. Such consent is not a condition precedent to the preparatory step of condemning a right of way on which to lay such track.

(a) The ordinance of the City of Tifton, granting to the railroad company a right of way for the industrial track for the use of the public upon the alley in that city upon which the company is seeking to lay the same, gives such consent; and the provision in said ordinance that this track shall not be used generally as a dray-track does not make such track a private one for private use, but expressly declares that it is one for public use, subject to the above limitation.

4. The necessity or expediency of taking property for public use is a legislative question upon which the owner is not entitled to a hearing under the due-process clause of the fourteenth amendment, and the same clause of the constitution of this State.

5. Under par. 22 of § 402 of the transportation act of 1920, the provision of par. 18 of said section, which requires a carrier by railroad, subject to said act, to procure from the Interstate Commerce Commission a certificate of its present or future public convenience and necessity, before undertaking the extension of its line of railroad or the construction of a new line, does not extend to the construction of spur, industrial, team, switching, or side-tracks located wholly within this State. The track involved in this litigation is a spur or industrial track.

6. In rendering a final decree in an equity case, and in dissolving thereby a temporary restraining order, the judge of the superior court is authorized to grant a supersedeas in his sound discretion, and upon such reasonable terms as he may fix.

Nos. 5036, 5037. DECEMBER 18, 1925.

Petition for injunction. Before Judge Bell. Fulton superior court. August 14, 1925.

28

T. W. Tift filed his petition against the Georgia Public Service Commission, hereinafter called the commission, and the Atlantic Coast Line Railroad Company, hereinafter called the railroad company; and made these allegations: The railroad company, desiring to extend one of its tracks along one of the alleys of the City of Tifton, applied to the governing authorities of said city, and succeeded in having passed an ordinance granting to it a permanent easement and right of way on which to construct and operate what was designated in the ordinance as an industrial track upon and through said alley and across certain streets in the city, such extension to extend to and include Central Avenue in said city. Said ordinance provided that the track so extended should not be used generally as a dray track, but should be used by the railroad and the public for unloading freight from cars on said tracks direct to the premises of adjoining property owners, and for loading into said cars direct from such premises. Thereafter the railroad company applied to the commission, under the act of August 17, 1914, for authority to condemn said alley for a right of way. Plaintiff was given notice of said application, and filed his response thereto. He participated in the hearing in opposition to the grant of said authority to the railroad company. The commission granted to the railroad company said authority, holding "That the purpose for which the additional track and terminal facilities is sought is a public one." Plaintiff owns certain described property abutting upon said alley, and as such has an existing title and right in said alley, which can not be taken from him except by a constitutional hearing. There are buildings on some of said described property, and the reasonable value of his lands and improvements is $84,000. If said alley is taken by the defendant for use as a track, whether public or private, it will damage plaintiff in the sum of $25,000. The hearing before the commission was concluded on the afternoon of June 26, 1925, and announcement was made by the commission that the testimony was closed. After argument had the commission took the matter under advisement. After the testimony was closed, and without notice to the plaintiff, the commission received from the railroad company, or some one acting in its behalf, a petition signed by some 500 people asking the commission to grant the application of the railroad company. Said petition was considered by some or all of the

members of the commission, and in so doing it denied plaintiff due process of law, in consequence of which the order of the commission granting such authority is null and void. The railroad company is threatening to file a proceeding to condemn plaintiff's property, and will do so immediately unless restrained.

The railroad company, being a foreign corporation, has no right of condemnation under the laws of Georgia, except under the above act of 1914, which only authorizes the commission to approve the taking of property for right of way for public use or uses. The City of Tifton by its ordinance refused to grant permission to the railroad company to lay tracks for public purposes. To permit the railroad company to take plaintiff's property for the purpose sought would be to permit it to take private property for private purposes, denying to plaintiff due process of law and the equal protection of the law, contrary to the fourteenth amendment to the constitution of the United States and the like provision in the constitution of the State of Georgia. The City of Tifton and the commission have no authority to grant any permit to the railroad company to use the alley in front of plaintiff's property and thus damage his property, because the use sought to be made of said property by the railroad company is one of which the Interstate Commerce Commission has sole jurisdiction, and the law of Georgia authorizing the city council and the commission to grant a permit to condemn said property is contrary to the commerce clause of the Federal constitution. For this reason the said order of the commission is null and void. The railroad company can not make said extension without obtaining from the Interstate Commerce Commission a certificate that the present or future public convenience and necessity require or will require the construction of such extension. The cost of such construction will be in excess of $50,000, and no earnings that could be received therefrom would be sufficient to pay the cost of operation and a fair return on the investment. In the hearing before the commission the evidence disclosed that said track could not reasonably be used to accommodate more than 25 cars annually. For this reason the finding of the commission that it was necessary and convenient to extend said track was without evidence to support it. If the use of said extended track is private, it is contrary to the constitutions of the State of Georgia and of the United States; and if a public one, it

is contrary to the transportation act of 1920. The plaintiff prayed that the order of the commission granting the railroad company authority for said condemnation be held to be null and void, that the commission be enjoined from certifying to the railroad company said order and from aiding the railroad company in any way in the use thereof, that the railroad company be enjoined from condemning said property for said purpose, and that the plaintiff have such other relief as it may be entitled to at law and in equity.

The railroad company and the commission answered, and both admitted the passage of the ordinance of the City of Tifton, referred to in the petition. In its answer the railroad company alleged that after the taking of testimony had been concluded before the commission in the application of the railroad company for authority to condemn said alley, certain protestants against the application filed a petition with the commission, opposing the granting of its prayer. Thereafter a large number of the citizens of Tifton circulated a petition in that city, approving the laying of said track along said alley, and obtained signatures thereto. This petition was not circulated by the railroad company, but it was procured by citizens of Tifton who are interested in its public development. There were about 500 names signed to this petition. Neither the plaintiff nor any other person made any protest against the filing of this petition with the secretary of the public service commission. It was not filed by this defendant. In its answer the railroad company further denied the substantial allegations of the petition on which the relief sought by the plaintiff is based. It further set up that the plaintiff has no right that will be invaded by anything the railroad company purposes doing. Said track is to be laid in an alley 30 feet wide, which has for years been dedicated to the public, which dedication was accepted, and it is now public property. The property over which said alley runs formerly belonged to the father of the plaintiff, who organized a railroad company which was known as the Tifton Terminal Company. This company was a common carrier and was engaged in interstate and intrastate transportation, and participated in rates and divisions incident to such transportation. There was laid in said alley a railroad track by said terminal company, which was of standard size and dimensions, over which standard railroad equipment was operated and used in ordinary transportation of interstate and in-

trastate commerce. This track to some extent remains in this alley at the present time, and it remained in there for a great many years. It was in this alley when the plaintiff acquired by inheritance or devise whatever property he may have abutting thereon. Said property had been subjected to the burden of a longitudinal railroad track at the time of its dedication, and it was subject to that burden at the time of the acquisition of the property thereon by the plaintiff.

In its answer the public service commission denied the substantial allegations of the plaintiff's petition on which he relied for relief. This defendant further set up that the petition of certain persons approving the petition of the railroad company for authority to condemn said alley was filed with its secretary, but was neither read nor considered by the commission in rendering its opinion in the case. The decision of the commission was based upon the evidence submitted to it.

It was stipulated between the parties, with the approval of the court, that this case should be tried by the court without the intervention of a jury, and a final decree be entered therein as though heard at the second term after the filing of the petition, and that a final decree be entered in the case. On the hearing the plaintiff introduced a stipulation between the parties, in which it was agreed that about an equal number of witnesses, citizens of Tifton, testified for and against the proposition that the track involved in this proceeding was desired by and would be beneficial to the people of Tifton. In this stipulation is set out the evidence before the commission on the hearing of the application of the railroad company for authority to condemn this alley for the extension of its tracks through the same. This evidence authorized a finding that this track was of public use, unless the ordinance of the City of Tifton renders a contrary finding necessary. Plaintiff introduced a certificate from the Interstate Commerce Commission that no application had been filed with it by the railroad company for authority to extend its present delivery track into this alley. The plaintiff testified that he was the owner of the property described in his petition, and that his property would be damaged $25,000 if this track was extended through this alley. He further testified that he was familar with the character of business conducted on said alley, and that it was not of the kind that would use to any con-

siderable extent the track sought to be constructed. If cars were placed on the proposed track, practically ninety to ninety-five per cent. of the incoming freight would be from outside of the State, or from its ports, which had moved in interstate commerce. Some freight might be shipped out over said spur-track to points in Georgia and out of Georgia, but the amount of such shipments would be very small, probably not more than one or two cars annually, as most of the deliveries of outbound freight are made by truck. The property located on said alley is already largely served by extensions of other railroad lines. He is familiar with the costs of constructing railroad tracks, and the cost of such extension would not be less than $6,000. To operate it would require the maintenance of a switchman at each of the avenues crossing said alley while cars were switched across them. The earning from such extension would not exceed $250 per year. The cost of obtaining said property for said extension, if a fair price is paid, in constructing said track, would exceed $50,000. The ordinance of the City of Tifton is as follows:

"An ordinance granting to the Atlantic Coast Line Railroad Company a right of way for the industrial or service track for the use of the public over, upon, and through a certain alley and across certain streets in the City of Tifton, to wit: Across the south end of Chestnut Avenue extension and thence in a northwesterly direction along, over, and upon an alleyway which runs through blocks Seven (7) and eight (8) and across Tift Avenue and Love Avenue to Central Avenue in said city.

"Section No. 1. Be it ordained by the City Commissioners of the City of Tifton, and it is hereby ordained by authority of the same, that the Atlantic Coast Line Railroad Company be and is hereby granted a permanent easement for the use of the public and the right to lay, construct, and maintain an industrial service track over, upon, and along across a certain alley and certain streets in said city beginning at the south end of Chestnut Avenue extension and running thence in a northwesterly direction along through block...... to Tift Avenue, thence across Tift Avenue and over, upon, along, and through said alley through block seven (7) to Love Avenue, thence across Love Avenue, and thence over, upon, and through said alley to Central Avenue in said city.

"Section No. 2. Be it further ordained, that said easement and

said right of way is granted upon the following conditions, and subject to the following restrictions, to wit: (a) The said track shall be so constructed and maintained that it will not interfere with the use of said alley by the public for the usual and ordinary means of travel. (b) As said track is laid and constructed across each of said avenues the Atlantic Coast Line Railroad shall relay and replace the pavement and shall repair any damage to the sewerage and water system, at its own expense, caused by the laying of such track across such streets and along such alley, and otherwise surface said avenues and put them in suitable condition for the use of the public. (c) No engine or train of cars shall be operated or switched over or across Love Avenue, unless and until a flagman or other person is present and stationed in advance thereof to give warning to the persons using said street of the approach of such engine or cars. (d) No trains shall be operated over said track, and no switching shall be done over the same except between the hours of 10:30 p. m. and 6 o'clock a. m., unless in case of emergency. (e) Said easement and right of way are granted for such ordinary use as the public may make of said privilege subject to the provisions of this ordinance, and said track is not to be used generally as a dray track."

The chairman of the railroad commission testified that at the close of the evidence before the commission certain parties filed a petition protesting the granting of the petition of the railroad company. Thereafter a petition was filed with the secretary of the commission, favoring the granting of the petition. Neither petition was opened or read by the commission, and, so far as he is advised, neither was read by any commissioner, and neither petition was given any force or effect in the forming of its decision. The railroad company then introduced testimony tending to show that such extension would be of public service, that its length was 1,700 feet, that 700 feet thereof has been laid but will have to be removed unless the track be completed, and that the estimated cost of said construction is $4,500.

After argument the court entered a decree denying the injunction prayed for, dismissing plaintiff's suit at his cost, and dissolving the restraining order previously granted. To this judgment the plaintiff excepted, and alleged that the court erred in rendering said judgment, on the grounds: (a) that by the terms of the

ordinance of the City of Tifton the proposed use of said extended track is a private use, and thus not one for which the right of eminent domain can be exercised; (b) the Georgia Public Service Commission could not grant the Atlantic Coast Line Railroad Company permission to exercise the right of eminent domain, unless the evidence shows that it was necessary and convenient in the service of the public, and there was no such evidence; (c) that the commission heard evidence after the hearing closed; and (d) that under the acts of Congress permission must be obtained from the Interstate Commerce Commission before the railroad company can extend its track as proposed, and before said company has the right to exercise the privilege of condemning private property.

In the cross-bill of exceptions the defendants complain that the court erred, on rendering its decree denying the injunction prayed for and dismissing the plaintiff's case, in granting a supersedeas, thus maintaining the status of the case until this case was decided by this court. The defendants allege that the court erred in granting this supersedeas, on the grounds (1) that the superior courts, or the judges thereof, have no power to grant a supersedeas from a final judgment denying a permanent injunction; (2) that there is no power or authority in said courts, or the judges thereof, to fix terms upon which there will be granted a supersedeas of such judgment; and (3) that there is no statute or rule of law authorizing the supersedeas of such judgment.

*Watkins & Asbill,* for plaintiff.

*Alston, Alston, Foster & Moise, W. E. Watkins, E. K. Wilcox,* and *Mitchell & Mitchell,* for defendants.

HINES, J. (After stating the foregoing facts.)

1. Any railroad company owning or operating a railroad in this State, whether chartered under the laws of this State or any other State or States, is authorized and empowered, among other things, "to build and maintain such additional depots, tracks, and terminal facilities as may be necessary for the proper accommodation of the business of the company;" and it is authorized to acquire, by purchase or gift, and to hold such real estate as may be necessary for such purposes; and if the same can not be acquired by purchase or gift, it is authorized to acquire the same by condemnation. This right of condemnation, however, can not be exercised until the railroad commission of this State shall first approve the

taking of the property or right of way designated for the public use or uses desired. Georgia Laws 1914, page 144; 2 Park's Code, § 2599(a) et seq.

2. This proceeding was brought by Tift, as the owner of abutting, improved real estate, to set aside as null and void an order of the Public Service Commission, approving the condemnation by the railroad company of a portion of a public alley in the City of Tifton as a right of way for the extension of one of its spur or industrial tracks which was already built and operated upon a portion of said alley. The plaintiff asserts that this order of the commission is null and void, because it approves the condemnation of said alley for a private use and not for a public one. This contention presents the only question in this case of pith and moment. Under the statute above dealt with, the Public Service Commission can only approve the condemnation by a railroad company of land for a public use. The commission is without authority to approve such condemnation for a private use. So the paramount question is whether the commission has approved the condemnation for a private purpose, and whether the railroad company is undertaking to condemn this alley for such purpose. All the authorities concur in holding that the question of public use is ultimately a judicial one. *Parham* v. *Justices,* 9 *Ga.* 341 (4); *Loughbridge* v. *Harris,* 42 *Ga.* 500; 20 C. J. 549, § 38. The courts have never been able to formulate an exact definition of what is a public use. *Nolan* v. *Central Ga. Power Co.,* 134 *Ga.* 201, 208 (67 S. E. 656). Often the line of demarkation between a private use and a public use is difficult of location. To fix such boundary often demands the use of the most accurate judicial microscope. A comprehensive definition of a public use, which excludes all irrelevant matter and includes all pertinent elements, is probably impossible. Without attempting such a comprehensive definition, we have to decide when a spur or industrial track is one of public use. The public nature of such a track does not depend upon the number of people that it accommodates, but rests upon the fact that everybody who has occasion to use it may lawfully and of right do so. The fact that such a track is also designed to serve a private use, while important in determining the character of the use, is not conclusive against its public nature. If the track is opened to the public, to be used on equal terms by all who may at any

time have occasion to use it, so that all persons who have occasion to do so can demand that they be served without discrimination, not merely by permission, and if the track is subject to governmental control under general laws, and in the same manner as are the main lines of a railroad, then the use is a public one. *Harrold* v. *Americus,* 142 *Ga.* 686 (83 S. E. 534) ; *Bradley* v. *L. & A. M. Ry. Co.,* 147 S. 22 (92 S. E. 539) ; *Railroad Commission* v. *L. & N. R. Co.,* 148 *Ga.* 443 (96 S. E. 855) ; Union Lime Co. *v.* Chicago & N. W. Ry. Co., 233 U. S. 211 (34 Sup. Ct. 522, 58 L. ed. 924). Whenever such spur or industrial track is owned and operated by a common carrier as a part of its system and under its public obligation, it is a public track and not a private one. It is devoted to a public and not a private use. Missouri Pac. Ry. Co. *v.* Nebraska, 217 U. S. 196 (30 Sup. Ct. 461, 54 L. ed. 727, 18 Ann. Cas. 989).. The fact that a track may, for the time being, benefit only one individual, or a few individuals, does not necessarily negative the public character of the use. *Railroad Com.* v. *L. & N. R. Co.,* Union Lime Co. *v.* Chicago & N. W. Ry. Co., supra.

It is not essential, to make the use of a spur or industrial track a public one, that its use should be open to all the public. The facility or instrumentality of transportation may be limited in its use. Such track may be used for the delivery of freight in car-load lots, and the fact that the use of such a track may be denied to shippers of freight in less than car-load lots would not destroy the public character of the track. If such a track is open to all members of the public who may wish to ship goods in car-load lots over such a track, such track is one of public use. If such a track is intended to be used and can only be used by industries located thereon, in receiving inbound freight and in shipping outbound freight, such track does not lose its character of one devoted to public use by reason of the fact that the carrier does not deliver to drays goods shipped over it, or receive from drays goods intended for outbound shipment over it. The evidence before the commission authorized the finding that the extension of this spur or industrial track was of public service. It will serve a number of industries located on it. It will serve all patrons who desire to ship freight in car-load lots to such industries, and all patrons who should desire to receive outbound freight shipped in car-load

lots from these industries. When complete, it will constitute an integral part of the railroad system. It will be subject to public regulation under State and Federal laws. It is competent for the State, acting through its Public Service Commission, to provide for this extension of the transportation facilities of the railroad company, so as to meet the demands of trade; and it may impress upon this extension of the carrier's line, thus furnished under the authority of the State, a public character regardless of the number served by it at the beginning. The fact that the Public Service Commission found that the extension of this track would serve a public use is of itself high and persuasive evidence of that fact. So we are of the opinion that there was evidence before the commission authorizing its finding, and that the extension of this track would serve the public, and that the attack upon this order, on the ground that it was unsupported by the evidence, is without foundation.

3. But it is insisted by counsel for the plaintiff, that before the railroad can extend this track it must procure the permission and consent of the city; that in granting its permission the city has the right to fix the conditions of the grant, which it has done; and that, whatever might have been the evidence before the commission as to the public use to which this track would be devoted, the use is fixed by the ordinance granting the city's consent to the extension of this track, and that the use to which this track can be put under said ordinance is a private and not a public use. It is true, as a general rule, that a railroad company must obtain the written consent of the municipal authorities before it can lay a track on any street of a city in this State. Civil Code (1910), § 2585; *Southern Cotton Oil Co.* v. *Bull,* 116 *Ga.* 776 (43 S. E. 52); *Athens Terminal Co.* v. *Athens Foundry & Machine Works,* 129 *Ga.* 393 (58 S. E. 891); *Harrold* v. *Americus,* supra. Whether such consent would have to be given before a railroad company could lay a track in a public alley of a city, which it has succeeded in condemning as a right of way for the construction of such track, is at least doubtful. But conceding that in such a case such consent is essential, and conceding further that the city ordinance is not broad enough to permit the extension of said track for public use, will the lack of such consent prevent the railroad company from condemning such alley for such right of way on which to lay

a track for the public service? In other words, is such consent a condition precedent to the condemnation of such alley for such right of way? We do not think that the grant of such consent is essential to the right of condemnation. If the condemnation of the alley is necessary in order to permit the railroad company to construct such extension, then its condemnation is but one step towards the accomplishment of this purpose. If the present ordinance is not broad enough to confer on the railroad company the right to make this extension in this alley, that fact might prevent the company from making such extension; but the lack of such consent will not prevent it from proceeding to condemn the right of way in said alley for this extension. If the present ordinance does not grant such consent, the railroad company would be in no worse fix than if it did not have the consent of the municipality to lay said track in said alley. Conceding that it has not such consent under such ordinance, then it may hereafter obtain from the city the necessary consent for this extension in this alley, and it is immaterial when it is secured. Anyway, the lack of such consent does not prevent the railroad from exercising the right of eminent domain in condemning the alley as a right of way for the extension of its track in said alley. Metropolitan City Ry. Co. *v.* Chicago &c. Ry. Co., 87 Ill. 317; Chicago & W. I. R. Co. *v.* Dunbar, 100 Ill. 110; Suburban R. Co. *v.* Metropolitan W. S. R. Co., 193 Ill. 217 (61 N. E. 1090); Union Pac. R. Co. *v.* Colorado Postal Tel.-Cable Co., 30 Colo. 133 (69 Pac. 564, 97 Am. St. R. 106); Dowie *v.* C. W. & N. S. Ry. Co., 214 Ill. 49 (73 N. E. 354); Memphis & S. L. R. Co. *v.* Union Ry. Co., 116 Tenn. 500 (95 S. W. 1019); Cal. So. R. *v.* Kimball, 61 Cal. 90; Matter of Gilbert Elevated Ry. Co., 70 N. Y. 361; Lewis on Eminent Domain (3d ed.), § 607; *Bridwell* v. *Gate City Terminal Co.,* 127 *Ga.* 520 (9) (56 S. E. 624).

We do not, however, think that the ordinance of the City of Tifton, granting to the railway company its consent to the extension of this track along this alley, creates a private use. The ordinance provides that the right of way in said street is granted for such ordinary use as the public may make of such privilege, and that said track is not to be used generally as a dray track. Properly construed, this ordinance provides that the railroad company may use this extension in the ordinary way in which industrial

tracks are used to serve the public, and especially recognizes the right of the public to use this extension. The provision that it shall not be used generally as a dray track does not otherwise limit the public use thereof; it only limits such public use in one particular. This particular is that the public can not generally use it as a dray track. Even such public use is not entirely prohibited. So we are of the opinion that under this ordinance the use of this extended track was not limited to private use, but on the contrary contemplates its use by the public. So the contention of the plaintiff that this ordinance confines this track to private use is not well founded; and the attack on the order of the Public Service Commission on this ground is without merit.

4. It is next urged that the plaintiff has been denied due process of law in the rendition of this judgment by the Public Service Commission, for the reason that that body received and considered, in reaching its conclusion in this matter, after the conclusion of the introduction of evidence on the hearing and without the consent and knowledge of the plaintiff, a petition of certain citizens of the City of Tifton, favoring the approval of the condemnation of this alley for the purpose of this extension. After the close of the introduction of evidence a petition was filed with the secretary, protesting against the approval by the commission of the condemnation of this alley. Thereafter about 400 citizens of the City of Tifton filed with the secretary a petition in favor of the approval of the condemnation proceedings by the commission. Counsel for the plaintiff earnestly insists that the reception and consideration of this latter petition by the commission denied to his client due process of law. Is this position well taken? In *City of Atlanta* v. *Georgia Ry. & Power Co.*, 149 *Ga.* 411 (100 S. E. 442), this court passed upon the validity of an order of the railroad commission fixing rates which might be charged by the Georgia Railway & Power Company. In fixing said rates a formal hearing was had, and after the conclusion of the evidence the matter was reserved for decision. In reaching a decision the commissioners took under consideration a document which had not been introduced in evidence. In a suit to declare void the order of the commission fixing such rates, one of the grounds of attack thereon was the consideration by that body of such evidence. In that case this court held that "the fact that the railroad commis-

sion may have acted in part upon information not formally introduced in evidence before it would not render void its order fixing a schedule of rates to be applied in the future." Again in *Mutual Light & Water Co.* v. *Brunswick,* 158 *Ga.* 677 (124 S. E. 178), this court held that an order lowering the rates of a public service utility could not be reviewed by the superior court upon writ of certiorari, because the act of rate-making was legislative or quasi legislative in character. It is now fairly well settled that "The necessity or expediency of taking property for public use are legislative questions upon which the owner is not entitled to a hearing under the due-process clause of the fourteenth amendment." Boom Co. *v.* Patterson, 98 U. S. 403 (25 L. ed. 206) ; Bragg *v.* Weaver, 251 U. S. 57 (40 Sup. Ct. 62, 64 L. ed. 135) ; Joslin Co. *v.* Providence, 262 U. S. 668 (43 Sup. Ct. 684, 67 L. ed. 1167) ; Georgia *v.* Chattanooga, 264 U. S. 472 (44 Sup. Ct. 369, 68 L. ed. 796) ; North Laramie Land Co. *v.* Hoffman, 268 U. S. 276 (45 Sup. Ct. 491, 69 L. ed. 953). It follows that the attack upon this order of the commission, on the ground that the plaintiff was denied due process, is without merit.

5. The plaintiff next contends that under par. 18 of § 402 of the transportation act, which is now subsection 18 of § 1 of the interstate commerce act, a railroad company can not exercise the right of condemning this alley for the extension of said track before it has obtained permission from the Interstate Commerce Commission for such extension. By said subsection it is provided that "No carrier by railroad subject to this act shall undertake the extension of its line of railroad, or the construction of a new line of railroad or extension thereof, . . until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity require or will require the construction or operation or construction and operation of such additional or extended line of railroad or the operation thereof." By par. 22 of § 402 of the transportation act it is declared that the authority conferred upon the Interstate Commerce Commission by par. 18 of said section "shall not extend to the construction or abandonment of spur, industrial, team, switching, or side-tracks, located or to be located wholly within one state." Transportation Act of 1920, 41 Stat. 456,

c. 91 § 402, par. 22, U. S. Comp. St. Supp. 1923, § 8563.  The spur or industrial track in question in this case is wholly within the State of Georgia, and is for a public purpose.  By the transportation act it is not within the jurisdiction of the Interstate Commerce Commission, but is within the jurisdiction of the Public Service Commission of this State.  Railroad Commission v. Southern Pac. Co., 264 U. S. 331 (44 Sup. Ct. 376, 68 L. ed. 713).  The claim that jurisdiction over this track is vested in the Interstate Commerce Commission is in the teeth of the transportation act of 1920.  Western & A. R. v. Georgia Pub. Serv. Com., 267 U. S. 493 (45 Sup. Ct. 409, 69 L. ed. 753).

6.  In denying a permanent injunction and in revoking a temporary restraining order previously granted, the trial judge granted a supersedeas pending the final determination by this court of the case.  The case was on final hearing, and the decree revoked a temporary restraining order and denied to the plaintiff the permanent injunction which he sought.  The defendants excepted to the granting of such supersedeas, upon the ground that the judge was without power to grant the same.  There are three methods of obtaining a supersedeas in this State.  The first and most common one is that provided for in the Civil Code (1910), § 6165.  This method is applicable where a judgment has been rendered in favor of one party against the other, such as a money judgment, a judgment for the recovery of property, or for specific performance, or some judgment determining the case or where there is an execution which may proceed against property.  *Mass. Bonding Co.* v. *Realty Trust Co.,* 139 *Ga.* 180, 186 (77 S. E. 86).  This method is not applicable to the present case, because no such judgment was rendered in favor of the defendants against the plaintiff.

The second method is that provided in the Civil Code (1910), § 5502.  This method is applicable in cases in which injunctions are granted or dissolved.  In such a case either party may sue out a writ of error to this court from a decision against him, upon complying with the law applicable to the same; but no such writ of error shall have the effect to establish or deny any injunction independently of the order of the judge, who shall, on rendering the decision, or granting the writ of error, make such order and require such bond as may be necessary to preserve and

protect the rights of the parties until the judgment of this court can be had in the case. It is unnecessary to decide whether this method of obtaining a supersedeas is applicable to the case in hand. If applicable, the judge below had authority to grant the supersedeas complained of by the defendants. If inapplicable, then we are to determine whether there is any other method under which the judge was authorized to grant a supersedeas. The third method is that provided in the Civil Code (1910), § 4850. This section confers upon the judges of the superior courts authority to grant writs of supersedeas; and confers such authority in all cases where the first and second methods above referred to do not apply. *Gusloso Mfg. Co.* v. *Ray,* 117 *Ga.* 565 (43 S. E. 984); *Montgomery* v. *King,* 125 *Ga.* 388 (54 S. E. 135); *Mass. Bonding Co.* v. *Realty Trust Co.,* supra; *Brandon* v. *Brandon,* 154 *Ga.* 661 (115 S. E. 115). In the case last cited it was ruled that it is against the policy of the law to permit the status to be changed until the final determination of the case in the court of last resort. It is left, however, in the sound, legal discretion of the judge to grant or refuse a supersedeas under this third method, and, in granting a supersedeas, to fix the terms on which it will be granted. *West* v. *Shackelford,* 138 *Ga.* 163 (74 S. E. 1079).

7. Applying the principles above ruled, the trial judge did not err in declining to grant an injunction as prayed by the plaintiff, in dismissing his suit, and in granting a supersedeas.

*Judgments affirmed on both bills of exceptions. All the Justices concur, except Akinson and Hill, JJ., disqualified.*